LYNN WADE v. THE STATE.

No. 7728. Decided January 23, 1924.

Rehearing denied June 25, 1924.

1.—Murder—Evidence—Declaration of Third Party—Res Gestae.

Where, upon trial of murder, defendant complained of the introduction against him of a statement or exclamation made by the State's witness Low, at or just before the shooting to the effect, "Don't shoot that woman" or something to that effect, held that here was no reversible error and the matter was res gestae. Following: Wynne v. State, 59 Texas Crim. Rep., 126, and other cases.

2.—Same—Evidence—Practice in Trial Court.

Where, upon trial of murder, defendant complained of the court's refusal to allow him to testify that when deceased shot him in March before the killing in May that he suffered pain from the efforts of it and became weak and went to bed, etc., but the record showed that the court admitted this testimony without limiting the same, there is no reversible error.

3.—Same—Evidence—Other Testimony of Same Import.

Where defendant complained of the court's refusal to permit him to testify that on the afternoon of the homicide he and his brother drove up and saw the team of the deceased near where they stopped, and that defendant said to his brother, "There is John and Rosie's team, let's get out of here right away," but the record showed that his brother had already testified to this matter, there is no reversible error.

4.—Same—Evidence—Threats by Deceased.

Where it appeared from the record on appeal that at the time when defendant's mother would have testified that deceased was watching the house defendant had moved away and was not there, there is no reversible error.

5.—Same—Evidence—Threats.

Where defendant complained that officer Robinson was not permitted to testify to a statement made to him by deceased with reference to some statements made by deceased of having had a pistol in her buggy, but the statement was not coupled with any threat against the defendant, there is no reversible error.

6.—Same—Evidence—Circumstances—Bloody Articles.

Where, upon trial of murder, it was shown that testimony of the State that in the hands of the deceased after she was shot was found a bouquet of artificial flowers, upon which there was blood, there was no error under the facts of the instant case.

7.—Same—Charge of Court—Threat—Self-Defense.

Where, upon trial of murder, the court's charge fully instructed the jury as to appellant's right to act upon any belief on his part that from any act done by the deceased, or any demonstration on her part defendant believed deceased was about to execute any threat theretofore made, there is no reversible error.

8.—Same—Manslaughter—Charge of Court.

Where, upon trial of murder, the court's charge on manslaughter authorized the jury to take into consideration all the facts and circumstances as they were known to the defendant, etc., there is no reversible error.

9.—Same—Requested Charge—Practice on Appeal.

In the absence of a requested charge seeking to present the law applicable to the particular state of facts set out, there is no error.

10.—Same—Credibility of Witness—Charge of Court.

Where appellant complained of the court's charge limiting the testimony given by the witness Clarke, and also in telling the jury that they could consider the indictment which had been returned against appellant for an assault to rape upon deceased, which was introduced in evidence only as showing motive, there is no reversible error.

11.—Same—Rehearing—Practice on Appeal.

Where this court after re-examining the record on appeal finds itself confirmed in the view that its former opinion made a proper disposition of the case, the motion for rehearing must be overruled, and the court only desires to mention in this connection that the admissibility of acts and statements of third persons as res gestae is sustained both by text writers and the decisions of this court. Distinguishing: Felder v. State, 23 Texas Crim. App., 477.

Appeal from the District Court of Hill. Tried below before the Honorable Horton B. Porter.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Morrow & Stollenwerck,* and *Collins, Dupree & Crenshaw,* for appellant.—On question of acts and declarations of deceased, indicating threats: Maclin v. State, 144 S. W. Rep., 951; Andrus v. State, 165 id., 189.

On question of court's charge on self-defense: Sims v. State, 9 Texas Crim. App., 594; Swain v. State, 48 id., 98; Barnes v. State, 133 S. W. Rep., 887; Ayres v. State, 137 id., 1146; Carter v. State, 183 id., 881.

On question of antecedent assault: Walker v. State, 156 S. W. Rep., 206; Williams v. State, 136 id., 771.

On question of court's charge on manslaughter: Howard v. State, 5 S. W. Rep., 231; Anderson v. State, 131 S. W. Rep., 1124; Pickens v. State, 218 id., 755.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hill County of murder, and his punishment fixed at fifteen years in the penitentiary.

Appellant was convicted of the murder of his sister-in-law. The record is voluminous and shows that some months prior to the homicide deceased filed a complaint against appellant for an assault with intent to rape her and that subsequent to the making of said charge she shot appellant with a pistol. There is a good deal of testimony with reference to a petty law suit between some of the relatives of the parties from which there arose feeling and animosity among different members of the family. On the day of the killing deceased and her husband came to the town of Hillsboro and hitched their team on the north side of the courthouse, on the courthouse square. Later appellant came to town with his brother Robert and they stopped their buggy on the west side of the courthouse, on the courthouse square. Appellant had a gun in the buggy loaded with buckshot. He remained near the buggy while his brother went off to transact some business. About the time the brother returned, deceased left the sidewalk west of the courthouse and started toward the entrance into the courthouse yard. Her route took her some eight to fifteen steps south from where appellant was. At or about the time she was at her nearest to him he got his gun from the buggy and as the woman fled into the courthouse yard he shot her. He claimed that she had a little bag or pocketbook of some kind in her hand and that she had previously pursued him at various times and had threatened to kill him and that as she came near him on the occasion of the homicide she had her hand and said pocketbook or bag up about her breast and he thought she had a pistol and that as she went away from him into the courthouse yard at a point near a tree and telephone post she turned and thinking she was about to shoot him he shot her. No pistol was found in the bag or pocketbook of deceased but a small pistol was found in a pocket in her dress after her death. It was in testimony that when shot she was holding in one hand a little bunch of artificial flowers and in the other the pocketbook or bag referred to.

Appellant's first bill of exceptions complains of the introduction against him of a statement or exclamation made by the witness Low

at or just before the shooting. This witness testified that he was in the door of a blacksmith shop on the west side of the courthouse square and saw deceased pass said shop going north. His attention was next attracted to her by hearing her scream and he looked up and saw deceased running just before she entered the courthouse yard. She was at that time about five or six feet west of the gate posts, running toward the courthouse. He saw the appellant reach into the buggy for his gun, pull it out and put it to his shoulder. Witness said it seemed to him as though defendant paused a little and then fired. He testified that when he saw appellant get the gun and level it he hollered and told him not to shoot that woman or "don't shoot that woman" something like that. This was the exclamation objected to. He said that at the time he hollered at appellant and told him not to shoot the woman she was running toward the courthouse and was facing toward said building and at that time was five or six feet from the west entrance to the courthouse yard. Witness further said that when he hollered at appellant not to shoot, he shot and the woman fell. We have examined all of the authorities cited by appellant in his brief filed in this case and also in his supplemental argument. In Sec. 87 of his Annotated P. C. Mr. Branch cites a number of authorities supporting the proposition that if the statements of a third person were part of the transaction and illustrative the feelings, motives and acts of the principal actors, proof of same is admissible as part of the res gestae. We are inclined to uphold the admissibility of the evidence as falling within that rule. We do not think it to be parallel to any of the cases wherein is discussed the law applicable to a statement made after the act done by the accused which is the basis of the prosecution, which cases usually proceed upon the proposition that the statement held objectionable express an opinion in some way affected by what had been done. Mr. Low's exclamation, "Don't shoot that woman" could but have appeared to the jury in this case the natural involuntary exclamation of one who views an injury about to be inflicted, and can in no sense be held to express his opinion as to who was right or wrong in the controversy. It reflects no expression of Mr. Low or belief that the shooting was without cause, or not in self-defense, or that it was the act of one guilty of a crime. The State's contention was that the woman was running at the time she was shot and that this state of facts was in existence when Mr. Low made the statement objected to. The appellant testified that when deceased got even with his buggy she turned like she was going to face him and he thought probably shoot, and he reached in the buggy and got his gun; that she went on through the gate and near a tree and telephone post and stopped and turned facing him like she was going to turn toward him and when she did that he leveled his gun and fired. We find ourselves entirely unable to attribute to the statement of Mr. Low the

objectionable features argued so strenuously by appellant. See Wynne v. State, 59 Texas Crim. Rep., 126; Jeffrey v. State, 9 Texas Crim. App., 603; Redman v. State, 67 Texas Crim. Rep., 374; Redman v. State, 67 Texas Crim. Rep., 374; Pettis v. State, 68 Texas Crim. Rep., 221, 150 S. W. Rep., 791; Freeman v. State, 77 Texas Crim. Rep., 583, 179 S. W. Rep., 1157; Kinney v. State, 65 Texas Crim. Rep., 251, 144 S. W. Rep., 257; Long v. State, 48 Texas Crim. Rep., 175, 88 S. W. Rep., 203; Kemper v. State, 63 Texas Crim. Rep., 1.

The next point briefed by appellant is bill No. 5 complaining of the refusal of the trial court to allow him to testify as a witness that when deceased shot him in March before the killing in May, from the effects of it he suffered pain and became weak and went to bed. An examination of the testimony of appellant shows that he testified that when deceased shot him on the occasion mentioned it broke the bone of his arm and that he went home and lay down on a bed.

Bill of exceptions No. 6 complains of the refusal of the trial court to permit appellant to testify that he suffered pain from the wound inflicted on March 11th by deceased up to the time of the homicide. It may be that in some form an exception to this testimony was sustained but an examination of the bill of exceptions shows that the court admitted this testimony, and the complaint directed at same appears to be that the court admitted it for certain specific purposes. There is nothing in the record which reflects the fact that the court told the jury they could consider it only for certain purposes. No charge was given the jury to that effect either orally or in writing as far as the record shows. The jury would thus seem to have been at liberty to consider the evidence for all purposes.

Bill of exceptions No. 7 shows to have been taken to the refusal of the court to permit appellant while a witness to testify that on the afternoon of the homicide he and his brother Robert drove up on the public square at Hillsboro and saw the team of deceased near where they stopped and that he said to his brother, "There is John's and Rosie's team; let's get out of here right away." From the direct testimony of the appellant as same appears in the statement of facts we quote:

"After we got there I noticed John and Rosie's team tied near the gate on the north side of the square. I didn't hitch the horse because I saw John and Rosie's team tied over on the north side of the square and I was afraid to leave my buggy and get out on the sidewalk, for it was dangerous for me to pass stores or anything like that, the doors; afraid that they would shoot me, one of them would, so we prepared to leave town at once. . . . I wanted to leave town immediately because I was afraid they would shoot me, John or Rosie one. . . . After Robert got back I asked him if he saw anything of Joe and he said that he didn't, and we were fixing to rush on out of town."

Robert Wade, appellant's brother, who was with him at the time testified in his behalf that just after they drove up to the place where the shooting later occurred, appellant said something about a team and said, "Let's don't stay here" or something to that effect. Appellant was permitted to testify fully to his fear of the deceased and that he and his brother were hurrying to get away from the scene where the shooting occurred at the time it took place; also to the fact that he told Robert to hurry and get through with his horse trade, that he wanted to get away. We think this gave to appellant the full benefit of setting forth his fear and sequent acts and that if any part of the rejected evidence was not later or otherwise fully brought out, appellant suffered no harm.

Appellant's mother gave evidence of frequent threats made by deceased to kill appellant; that deceased shot into witnesses' house, and carried a pistol for appellant and made various threats against him and that she had communicated these things to appellant. Bill of exceptions No. 9 complains that this witness was not allowed to testify that she saw deceased watching the house, etc. An examination of the record makes it appear that at the time when witness would have testified that deceased was watching the house, appellant had gone to live at his brother Joe's place and was not there. The other things contained in said bill of exceptions appear to have been stated by the witness substantially.

Bill of exceptions No. 10 complains that officer Robinson was not permitted to testify to a statement made to him by deceased. Appellant had complained to the officer that deceased was pursuing him and that he wished her searched for a pistol. The officer searched her and found no weapon. She told him at the time that she had a pistol in her buggy. It is to the rejection of this latter statement that appellant's complaint is addressed. We see no error in this action of the court below. Said statement of deceased was coupled with no threat against appellant, nor is it contended that what she said to officer Robinson was communicated to appellant or that it in anywise affected his action in shooting deceased.

It was in proof that in the hands of deceased after she was shot was found a bouquet of artificial flowers upon which there was blood. We perceive no error in permitting the introduction of said flowers in evidence. Appellant claimed that he thought from what he saw that deceased either had or was about to draw a pistol. The production before the jury of all of the things had by deceased in her hands at the time might tend to rebut the reasonable appearance of danger as contended for by appellant.

There are a number of objections to the charge of the court all of which have been carefully and fully considered by us. We do not think the charge of the court too restrictive upon appellant's rights in any particular. The jury were told that the matter must be viewed

from his standpoint alone in determining the danger or the apparent danger. Nothing appears in testimony indicating a belief on the part of appellant that deceased was seeking a safer place from which to attack him in her flight. He testified himself that when he shot she had stopped and turned toward him. This seems to us to remove entirely from the case the proposition that he shot her under any belief that she was fleeing toward any tree, post or door for the purpose of using same as a place of advantage from which to make some attack upon him. We think the charge fully instructed the jury as to appellant's right to act upon any belief on his part that from any act done by her or any demonstration on her part he believed she was about to execute any threat theretofore made. We quote the following from paragraph eleven of court's charge:

"If, therefore, the defendant had been informed before the time of the killing that the deceased had threatened to take his life or do him serious bodily injury, and if at the time of the killing the deceased Rosie Wade, by some act then done, manifested an intention to execute the threat so made, if such act on the part of the said Rosie Wade, if any, alone or in connection with all the other circumstances and facts in evidence, produced in the mind of the defendant the belief that the deceased was about to execute such threat, and if acting under such belief the defendant shot and killed the said Rosie Wade, the killing would be justifiable and you should acquit the defendant, and in determining whether or not the said Rosie Wade did some act manifesting an intention to execute such threat, if any had been communicated to the defendant, and in determining whether or not such act on the part of the said Rosie Wade, if any, alone or in connection with the other facts and circumstances in evidence, produced in the mind of the defendant the belief that the deceased was about to execute such threat, you will view the matter from the standpoint of the defendant at the time and from his standpoint alone."

This charge differs materially from those referred to in the cases cited in appellant's brief in that this charge in each part thereof requires the jury to determine the issue submitted from the standpoint of the accused at the time.

In giving the jury the law applicable to manslaughter the court authorized them to take into consideration all the facts and circumstances as they were known to the defendant and we do not believe the charge open to any objection that it was either argumentative, vague, indefinite or that it authorized the jury to find the defendant guilty upon a less degree of proof than required by law.

Appellant had a number of bills of exception reciting a series of matters in testimony and complaining because the court failed to charge the jury the law applicable to such facts. In neither instance does there appear any special charge seeking to present the law applicable to the particular state of facts set out and we are of opinion

98 T C.—°

that it would have been dangerous for the court to have attempted to single out or enumerate facts and give charges such as seem desired by appellant. Same would have been apparently upon the weight of the evidence.

Appellant complains of the charge in limiting the testimony given by Mr. Clarke, and also in telling the jury that they could consider the indictment which had been returned against appellant for an assault to rape upon deceased, which was introduced in evidence, only as showing motive if they believed it did show motive. The authorities cited by appellant in support of these two bills of exception are not believed by us to be in point. There is nothing in the charge in the instant case which would indicate to the jury that it was the court's belief that the testimony objected to should in fact be considered by the jury as accomplishing the purpose for which it was offered by the State, this being the vice of the charges in the cases discussed by appellant.

We have considered each bill of exceptions found in the record, whether discussed in appellant's brief or not, but are unable to believe that any of them show injury or lead to the conclusion that he has been denied in any way a fair and impartial trial.

The judgment will be affirmed.

*Affirmed.*

#### ON REHEARING.

#### June 25, 1924.

HAWKINS, Judge.—We have considred the motion for rehearing and arguments in connection therewith, and re-examined the record relative to those points again urged as errors calling for a reversal. We find ourselves confirmed in the view that our former opinion made a proper disposition of the case, and only desire to mention particularly one matter. In his insistence that the trial court committed error in permitting Low to testify that he called to appellant "Don't shoot that woman," chief reliance seems to be on the illustration used in the opinion in Felder v. State, 23 Texas Crim. App., 477, 5 S. W., 145. An examination of that case will reveal that the illustration used was foreign to the real question before the court for decision. Felder was charged with a wanton killing. A witness testified that after the shooting some one pointed toward accused and said, "There is the man who did the shooting." Another man was with accused at the time. The statement of the bystander was held inadmissible on the ground that although accused may have heard it the accusation did not individualize him, hence called for no response from him. We think the illustration used in Felder's is equally inapplicable to the present case. Low was about one hundred feet from appellant and deceased; he heard deceased scream and called to appellant not to

shoot. The remark was an exclamation directed to appellant. Sustaining the admissibility of it we refer to Underhill's Cr. Ev., 3d Ed., Sec. 168; Wharton's Crim. Ev. (10th Ed.), Vol. 1, Sec. 262, p. 497, where many authorities are collated sustaining the admissibility of acts and statements of third persons as res gestae of the crime, among them being State 1. Kaiser (Mo. Sup. Ct.), 28 S. W., 182.

The motion for rehearing is overruled.

*Overruled.*