IMOGENE KING V. THE STATE.

No. 23049. Delivered March 7, 1945.

The opinion states the case.

*Forrester Hancock,* of Waxahachie, for appellant.

*C. C. Randle,* County Attorney, and *Fred L. Wilson,* Assistant Count Attorney, both of Waxahachie, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was given a sentence of twelve years in the penitentiary for the murder of Ivory "Tump" Williams.

The Coleman Building is a two-story structure situated in the negro section of Ennis. The lower floor is occupied by the Coleman Grocery Store. The second floor is a hall, or auditorium, at one end of which is a three-room apartment occupied by Lena Coleman. In the afternoon of May 25th, 1944, several of the school people were engaged in preparation for an entertainment in the hall, denominated by some "a style show." Lena Coleman was busily engaged, in the kitchen, curling the hair of Queen Esther Joiner. Arlene Harrison and Gazetta Blue were there. Ida Blue, the mother of Lena, was in another room while a number of the younger set were in and about the hall when Imogene King and Catherine Wills came in. Ivory "Tump" Williams and George Black, negro boys about sixteen years of age, came together and joined their friend Raymond Robinson in a conversation with the women who began teasing them about buying a corsage for their girl friends. Tump opened his purse to exhibit his money and Imogene discovered he had a number of pictures of girls which she wanted to see. He let her have the picture of Lenorris Hunter conditioned that she would not show it. Immediately she violated this trust and told Lenorris that there was her picture which her boy friend did not want any longer. This incensed Tump and precipitated a quarrel. Thus far the evidence seems to be concurred in by the appellant. Things that happened thereafter, however, are viewed with different eyes by the appellant, testifying in her own behalf, and several other witnesses who testified for the State.

According to the State's viewpoint Tump was mild mannered and smiling but appellant went into a rage and began cursing him. She invited him down the stairs and told him she was going to kill him. They went. Ida Blue viewed the proceedings from the window. She saw the stabbing which took place just outside, near the door to the stairway. She did not see Tump do anything. "He had his hands down by his side. All at once Imogene *strike* at Ivory with a butcher knife. * * * He turned and ran and Imogene ran right behind him. * * * He jumped across the ditch and she did too and she struck at him with the knife as he jumped the ditch." Other witnesses told of the stabbing in the same partial manner. Imogene's story was quite in conflict. She says that when she had showed the picture to Lenorris and turned to Tump he went into a rage, cursing her and threatening to kill her. He called her vile names, accused her of being pregnant and threatened to cut her in a most serious manner. She jerked loose from him and went over towards the stove. He told her she was ignorant. She left the hall and went into the bed room and Tump continued his cursing. His friend Raymond urged him on. He pursued the fuss continuing his threats with gestures, part of which time he had the butcher knife afterwards used by her. She went downstairs but did not invite him—he followed. According to her view this continued for about thirty minutes. At the foot of the stairway Tump picked up a brick which was used as a door stop, and threatening her continued cursing and abusing her. She tried to rid herself of him by persuading him to go on away but he would not do it. She stabbed him because she thought he was going to hit her with the brick and she was afraid of him. When she did so she dropped the knife and ran around the building. He ran up the street, and died a few minutes later. She went to a neighbor's house and called for the officers.

Quite different is the story told by Robert Meyers, who was standing near-by when the stabbing took place. He, with others, declared that she pursued him with the butcher knife and made other attempts to strike him with it. In rebuttal about five witnesses testified, each denying in detail the story as told by appellant. Lena Coleman said there was no brick used as a door stop. There is no way to reconcile their evidence. If Imogene described the trouble as it occurred then all other witnesses plainly perjured themselves. The jury had its choice to believe the evidence of the State or the defense. According to the State's theory it was a wanton and brutal murder and the penalty was light. According to appellant she was justified in acting in her own self-defense and should have been acquitted.

The only bill of exception in the case complains of the statement of Ida Blue, who viewed the stabbing from a window in the second story. When she saw the appellant raise the butcher knife she hollered at her and said: "Imogene, don't kill him. Don't kill Ethel's baby. Please don't kill Ethel's last child." The court, in qualifying the bill, says that the justaposition of the parties was such that the defendant was within the range of the witness' voice when she made the statement.

In behalf of the contention that the admission of the evidence is reversible error appellant has cited Kincheloe v. State, 183 S. W.. (2d) 463; Ex parte Kennedy, 57 S. W. 648; Brown v. State, 22 S. W. 596; Felder v. State, 5 S. W. 145, and Branch's Ann. P. C. Secs. 87 and 64. We have carefully considered each of these cases and do not feel that they are authority for the contention made. Wade v. State, 263 S. W. 589, considers the question of declarations of a by-stander under almost identical circumstances to those before us and the conclusion which Judge Lattimore reached in that case is in accord with our view in the instant case. The by-stander's statement was but "the natural involuntary exclamation of one who views an injury about to be inflicted, and can in no sense be held to express his opinion as to who was right or wrong in the controversy." It expresses no belief that the stabbing was without cause, not in self-defense, or that it was the act of one guilty of a crime. It indicates no concurrence on the part of the appellant and there appears no controversy as to the identity of the killer. See also McEntire v. State, 160 S. W. (2d) 961 and Wharton v. State, 38 S. W. (2d) 72.

No other question is found in the record which, in our view, requires consideration. The judgment of the trial court is affirmed.