M. M. SCOTT V. THE STATE.

No. 23628. Delivered April 2, 1947.
Rehearing Denied June 4, 1947.
Request for Leave to File Second Motion for Rehearing Denied June 11, 1947.

530

*Polk Shelton* and *Wright Stubbs,* both of Austin, for the appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The homicide for which appellant is charged took place in the City of Austin. A conviction resulted from the first trial, in Travis County, with a five year sentence. The case was reversed (see 149 Tex. Crim. Rep. 4; Scott v. State, 190 S. W. (2d) 828) and thereafter transferred to Bastrop County. The present appeal is from a conviction with a sentence of twenty-five years in the penitentiary.

There is no material difference in the statement of facts as found in the two appeals. The statement in the former opinion is here referred to and is considered sufficient as a basis for the discussion of the question presented at this time.

It is also true that the questions of law raised, all of which relate to the admissibility of evidence, were likewise in the former appeal and, while they were considered, the case was reversed because of an error in the court's charge and the questions as to the admissibility of the evidence were not discussed in the opinion. We considered then as now that they reflected no error.

Recalling the evidence in the former case, trouble had existed between appellant's son and a Mr. Stark, whose wife was a sister to the deceased Jessie Singleton for whose murder the appellant was convicted. The Starks were living in a house owned by Scott and the difficulty which culminated in the double killing has extended over a period of several weeks. The state was permitted, over objection, to prove things said and done

by appellant and his deceased son over this period of time, even up to and including the morning of the killing. Some such statements may be classified as threats; but the effect of all was to show the bitter feeling which appellant himself had against the Starks, in whose behalf Singleton appeared. When the Scotts came to the residence in the morning and demanded the immediate eviction of their tenants, Mrs. Stark protested and threats were made against her. She called for her brother and for the officers. The brother appeared first, went into the house and consulted Mrs. Stark while appellant and his son remained at or near the street. Singleton then went out, with his gun displayed at his belt, and immediately approached the subject. Appellant knew that he was Mrs. Stark's brother. He knew that a conference had just been had between them. Singleton was taking the place of his sister, whose husband was out of town, and the bitter feeling which Scott had for Mrs. Stark and her husband would naturally be imputed to him for Singleton, under all of the circumstances of the case.

Appellant took the witness stand in his own behalf at this trial and denied that he shot Singleton, claiming that all shots were fired by the son after Singleton had first fired at him. He disclaimed any part in the tragedy, though admitting the application of the law of principals. It is a pertinent inquiry, on the part of the jury, to find and determine the feeling existing between appellant and the deceased Singleton. It appears to the writer that this conclusively determines the issues against appellant.

We have carefully considered the authorities cited in appellant's brief and do not think they are pertinent. Threats were made against Singleton originally, but they were made against the Starks who were directly connected with the difficulty. This fact distinguishes the instant case from all of the authorities which appellant has cited on the subject of threats. It is particularly noted that Texas Jurisprudence, Vol. 22, pages 767-8, lays down the rule as quoted in appellant's brief, that: "A previous difficulty between the defendant and a third person may be proved if it led up to the killing, or involved the deceased in any way, or tends to reveal the defendant's motive or state of mind. But if the difficulty was in no way connected with the homicide, evidence of it is inadmissible." See also authorities cited thereunder.

We believe that this general discussion sufficiently gives

the view of the court on each and all of the questions raised by the appellant.

The judgment of the trial court is affirmed.

HAWKINS, P. J., absent.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

A sharp conflict arises under the testimony as to who fired the shot that killed the deceased. Mrs. Stark, sister of deceased, testified that it was the appellant; appellant and the witness Lundell testified that it was W. W. Scott, son of appellant—and not the appellant, himself.

Both theories were submitted to the jury—that is: that appellant killed deceased, or aided W. W. Scott, as a principal, in so doing.

The jury, without designating upon which theory that conclusion was based, returned a general verdict finding appellant guilty.

Appellant insists that he was entitled to have the jury instructed upon his right to shoot in defense of himself, notwithstanding the fact that he denied shooting the deceased. A proper exception was reserved to the charge for failing to submit that defensive theory. This contention was not insisted upon by appellant on the original submission of the case.

We note that the trial court instructed the jury "that if you do not believe, or if you have a reasonable doubt that the defendant, M. M. Scott, fired the shot that killed the deceased, Jessie Singleton, then you will acquit him, unless you find him guilty under the instructions hereinafter given you." The language, "instructions hereinafter given you," had reference to the application of the law of principals. The effect of such charge was to tell the jury that if appellant did not fire the shot which killed deceased, he could not be convicted upon that theory.

Appellant insists, however, that there was testimony showing that he did shoot the deceased, which testimony, together with other facts in evidence, raised the issue of self-defense upon his part.

If appellant's contention be sustained by the record, he would be entitled to such a charge—and this, notwithstanding he denied shooting the deceased. Knight v. State, 84 Tex. Cr. R. 395, 207 S. W. 315.

The facts, then, must be reviewed in the light of that contention.

We note, first, the testimony of Mrs. Stark. She says that deceased, after having talked over the telephone with the sheriff's department, "went out toward W. W. Scott and M. M. Scott, out in the front yard. With reference to their automobiles, well, the automobile was parked in front of the house and the truck was parked down the drive. They were in their cars until he walked out there, and then they walked over toward him. Jessie Singleton (deceased) walked up toward W. W. Scott. I heard my brother say, 'Whats the matter, Winfield; can't you give her a chance to get out?' I couldn't hear anything after that. He kept a coming closer—M. M. Scott (appellant) kept coming closer toward my brother, and my brother was standing close to W. W. Scott, real close. My brother was standing there—may I show you how he was standing? He walked out there like this (indicating) ; he had a habit of standing with his arms across his stomach. He was standing that way, the way I have indicated, with his hands across his stomach. Well, I *seen* him look toward M. M. Scott—tha*ts* the defendant; and, I presume - - - He brings his gun, the long-barreled gun that he had drawn on me, and fired at my brother and my brother fell." Upon cross-examination, Mrs. Stark testified that the deceased made no demonstration as if to draw a pistol he had in his belt, and that "he never raised his hand on that gun— never; he didn't go out there for trouble, he went out there to talk things over."

The witness, Lee Singleton, son of the deceased, did not attempt to say who—that is, W. W. Scott or M. M. Scott—killed his father. He testified that at the time his father was shot he did not have a gun in his hand but "was standing with his arms folded loosely down by his waist like this (indicating)."

The witness Lundell, offered by appellant, testified that W. W. Scott killed deceased as deceased "walked up to talk to W. W. Scott and then W. W. Scott fired a shot and Singleton fell to his knees, and then *it* was another shot fired and Singleton fell over on his back * * *. I didn't see *no* gun in the hand of Jessie Singleton. I didn't see *no* gun on him; if he had a gun on him,

it might have could have dropped as he fell * * *." Upon cross-examination, he further testified: "I saw W. W. Scott just as plain as I see you now. I saw the gun in his hand, and I saw him shoot Jessie Singleton. He fired one shot, and he fell the first shot that was fired. He fired the first shot that was fired. Jessie Singleton wasn't doing anything; he was just standing there doing nothing. He didn't do anything; when he walked up, he got shot * * *."

According to appellant's testimony, he fired no shot and the acts and conduct on the part of deceased, according to his testimony, were directed towards W. W. Scott.

For the right of self-defense to arise, there must be—among other things—some act or demonstration or words coupled with acts or demonstrations on the part of the adversary toward the accused. 22 Tex. Jur., Homicide, Sec. 43, p. 445.

Applying that rule to the quoted testimony, we see the deceased made no demonstration or committed no act which, in law, would authorize the appellant to claim self-defense, for such facts negative any act or demonstration on the part of deceased towards appellant. The opinion is expressed, therefore, that the facts did not raise the issue of self-defense, as insisted upon by appellant.

Mrs. Stark was permitted to testify that immediately after the shooting she said to Lee Singleton, "Lord, God, they have killed your dady; lets run, they are going to kill us." She further testified, "Then, I went out the back door over next door, but, before that, I talked some more with Lee and he said, 'If they have killed my dady, I'm going to kill them.' Thats what he answered back * * *."

To this testimony appellant objected "because * * * said conversation would not be a part of the res gestae" and was had out of the presence and hearing of the defendant and was highly prejudicial. Appellant takes the position before this court that the above statement was from bystanders.

Mrs. Stark was not a bystander. The killing occurred as a result of the efforts on the part of appellant to evict her from the house she rented. The deceased and his son, Lee, were present on the occasion to assist her in moving; moreover, there was testimony that immediately after the shooting appellant

made the statement, "Now, we will get the old lady"—referring to Mrs. Stark.

The statement, "Lord, God, they have killed your da*dy;* le*ts* run, they are going to kill us," was clearly a part of the res gestae. See: Wade v. State, 98 Tex. Cr. R. 27, 263 S. W. 589; King v. State, 185 S. W. (2d) 987; Barfield v. State, 118 Tex. Cr. R. 394, 43 S. W. (2d) 106; Vallone v. State, 141 Texas Crim. R. 220, 147 S. W. (2d) 227; Washington v. State, 113 Tex. Cr. R. 291, 21 S. W. (2d) 524.

Appellant having objected to the whole of the statement and a part thereof being admissible render unnecessary a determination of the admissibility of the remainder of the statement, under the rule that where a part of the testimony objected to is admissible a general objection to all of the evidence, including the admissible portion, is too general. Branch's P. C., Sec. 211; Cadle v. State, 122 Tex. Cr. R. 595, 57 S. W. (2d) 147; Tracy v. State, 111 Tex. Cr. R. 160, 12 S. W. (2d) 205.

The trial court having included in the charge submitting the right of W. W. Scott to shoot in defense of himself the words "or if you have a reasonable doubt thereof," we are unable to agree with appellant that the charge shifted the burden of proof to establish such defense.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant has requested leave to file second motion for rehearing, in which motion he again urges that he was entitled to an instruction on defense of himself as well as defense of his son. The testimony of appellant is referred to as raising the issue of him acting in his own defense. He testified that when deceased came out of the house he had a pistol in his hand and that appellant asked him not to come there, and that deceased "* * * come around the car cursing, and he says, 'I'm

the law, you God-damn son-of-a-bitch; I'm going to pull you out.' Then, he came to the door where my son was and my son grabbed his gun with his left hand and they tussled a few minutes and he went back toward the car and my son shot him."

This clearly shows that although the cursing may have been directed at appellant, deceased was doing no hostile act towards him, but was "going back toward the car." We have again reviewed the evidence of other witnesses and remain of opinion it does not raise the issue that appellant was acting in defense of himself.

So believing, the request for leave to file second motion for rehearing is denied.