Dan Lee INGHAM, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 818–83, 819–83.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 17, 1984.

Phil Burleson, Robert T. Baskett, Dallas, for appellant.

Reynaldo S. Cantu, Jr., Dist. Atty., and Kirk Brush and S. Vance Jones, Asst. Dist. Attys., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This is an appeal from dual convictions of murder and voluntary manslaughter. In separate indictments the appellant was charged with the March 20, 1980, slaying of Brett Michael Butler and uxoricide of Elsie Rosa Ingham. By agreement, the cases were consolidated for trial. The jury found the appellant guilty of the murder of Brett Michael Butler pursuant to V.T.C.A., Penal Code, § 19.02, and assessed punishment at life imprisonment. The jury found the appellant guilty of the lesser included offense of voluntary manslaughter of his wife, Elsie Rosa Ingham, pursuant to V.T. C.A., Penal Code, § 19.04, and assessed punishment at 18 years imprisonment. Judgment on the verdict in each cause was entered on July 30, 1980.

On direct appeal, the Corpus Christi Court of Appeals reversed the judgment of the trial court and remanded for a new trial. *Ingham v. State,* 654 S.W.2d 516 (Tex.App.—Corpus Christi 1983). The basis for the reversal was the dual finding that appellant had been denied a fair trial and that appellant's trial counsel had failed to render effective assistance. On December 21, 1983, we granted the State's Petition for Discretionary Review to determine whether the Court of Appeals was correct in reversing the convictions. We reverse the decision of the Court of Appeals and affirm the convictions.

Central to the Court of Appeals' decision that appellant's trial was not fair and his counsel was ineffective,[1] is the finding the prosecutor entered into evidence, and defense counsel failed to object to, certain

---

1. These two grounds of error are regarded as "complements to one another, reflecting opposite sides of the same coin...." *Cude v. State,* 588 S.W.2d 895 (Tex.Cr.App.1979).

evidence of unadjudicated extraneous offenses, hearsay evidence, and oral statements made to the police the day of the killings. We find a recitation of the facts necessary to our disposition of this case.

The record reflects that on March 20, 1980, at approximately 9:30 a.m., the appellant and his wife, Elsie Rosa Ingham, were in the kitchen of their home engaging in a heated discussion concerning a pending divorce action. At some point during that discussion, appellant stabbed his wife eleven times with a knife. Medical testimony established that she died as a result of a fatal stab wound to the chest.

After stabbing his wife, appellant drove his van a distance of some nine or ten blocks to a house where his wife's brother, Ralph Shanabarger, and Ralph's girlfriend, Sandra Curtis, were living with their friend, Brett Michael Butler. Appellant knocked on the door and requested to speak with Ralph Shanabarger. Even though Ralph was present at the time, for reasons that will become apparent *post*, he did not wish to speak with the appellant. Ralph had instructed Brett Butler to tell appellant he was not at home, which Brett did when he answered the door. Appellant said that "Elsie had been hurt real bad" and needed to see Ralph. Appellant then turned to leave. After appellant had left the front door, Ralph instructed Brett to tell the appellant that they would come over to check on Elsie in a little while. Brett Butler followed appellant into the front yard to relay Ralph's message.

As Brett was relaying the message, appellant procured a shotgun from his van. Appellant then shot Brett Michael Butler in the chest. As appellant walked past Brett toward the house, appellant again shot the victim in the back.[2] Despite surgery, Brett Michael Butler died as a result of those gunshot wounds.

Appellant then proceeded into the house where Ralph Shanabarger and Sandra Curtis were attempting to barricade themselves in a bedroom. Appellant fired a shotgun blast through the closed bedroom door, striking Ralph Shanabarger in the left arm. As appellant entered the bedroom, an extended struggle ensued. Ralph succeeded in gaining control of the weapon and disabled the appellant with a shot which struck him in the shoulder.

In the face of overwhelming evidence of guilt, see *Ingham,* supra at 520, the appellant's sole defensive theory at trial for both slayings was sudden passion. Appellant testified that during his conversation with his wife immediately preceding her demise, she told him that she had been going to bed with Brett Michael Butler for several months. Appellant's testimony was the sole evidence of any prior illicit relationship between his wife and Brett Michael Butler. Appellant testified that after this revelation he "just about went crazy" and could not remember any of the above events.

We now turn to consider one category of evidence admitted at appellant's trial which the Court of Appeals found was not relevant to any issue in the trial. This evidence concerns various extraneous offenses and acts of misconduct committed against Ralph Shanabarger and Sandra Curtis, both of whom testified for the State.

The record shows that Sandra and Ralph moved to Harlingen in April, 1979, and lived with appellant and his wife (Ralph's sister) for several months. At the outset, the four enjoyed a good relationship. Indeed, appellant hired Ralph to work in a construction business owned by the appellant and his partner Dick Anderson. In December, 1979, Ralph injured his wrist while working on a job site. He filed a lawsuit against his employer, and the appellant was a named defendant. The relationship between appellant and Ralph soured quickly thereafter, so Ralph and Sandra moved into their own apartment.

---

**2.** The murder of Brett Butler was witnessed by Wilfred Whipple who happened to be situated in a parked vehicle some 60 to 70 feet away.

The testimony reveals that in January, 1980, appellant went to their apartment and proceeded to bang on the front door. During this incident, the appellant "busted a hole through the front door." The next day Ralph went to the police station to file a complaint, but at the behest of the appellant, and upon his promise to repair the door, the charges were dropped.

A short time later, appellant filed theft charges against Ralph for allegedly stealing some tools. The charges were not accepted by the District Attorney's office due to the pending civil suit.

The Court of Appeals found that the legal and personal problems appellant had with Ralph Shanabarger, as well as the incident involving the front door of Ralph's apartment, were inadmissible and should have been objected to by appellant's trial counsel. We disagree.

V.T.C.A. Penal Code, § 19.06 provides: "In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

Thus, Section 19.06 would allow admission of this evidence if it:

1. shows relevant facts and circumstances surrounding the killing; or
2. shows the previous relationship between the appellant and the deceased; or
3. shows the condition of the mind of the accused at the time of the offense.

The Court of Appeals held that Section 19.06 was not applicable to the above facts because they were not relevant to the killing nor were they relevant to the previous relationship that existed between the appellant and either of the victims. *Ingham*, supra at 518. While this holding is certainly true, our analysis of these facts shows that these prior extraneous events were admissible to show the condition of the mind of the appellant at the time of the murder of Brett Michael Butler.

As noted earlier, appellant's sole defensive theory at trial was that the killings were a result of sudden passion. The State's theory of the case, however, was that appellant had gone to Butler's residence seeking to kill Ralph Shanabarger, and Butler was killed simply because he was in the wrong place at the wrong time. It was the State's contention at trial, therefore, that the appellant's testimony regarding his wife's affair with Butler was a recent fabrication supportive of his sudden passion defense. The State's theory was that appellant arrived intending to kill Elsie's brother, not her alleged paramour.[3]

Inasmuch as appellant proceeded to attempt to kill Ralph Shanabarger *after* he had already twice shot Butler, and the evidence revealed that he had to reload his shotgun in order to accomplish that attempt,[4] appellant's defensive theory of sudden passion was clearly placed in issue.

■ A previous difficulty between the defendant and a third party may be proved if it led up to the charged offense, or involved the victim in any way, or tended to reveal the defendant's motive or state of mind.[5] 18 Tex.Jur.3d, Criminal Law § 245. In *Ruiz v. State*, 523 S.W.2d 691 (Tex.Cr. App.1975), evidence of an extraneous offense committed against a third party was held admissible to rebut the defensive theory of sudden passion. In that case, the defendant killed his "woman" after allegedly discovering that she was having an affair with another man. In rebuttal of the defensive theory of sudden passion, the

---

**3.** This theory was advanced by the prosecutor in closing argument.

**4.** State's witness Detective Joseph Vasquez testified that the magazine capacity of the murder weapon was a maximum of three shotgun shells. State's exhibit number 11 reveals that there were four shotgun shells spent at the Butler residence.

**5.** All emphasis throughout this opinion is that of the writer unless otherwise indicated.

State was allowed to present evidence to show that the defendant had raped the victim's daughter, and she subsequently threw him out of her house. This testimony supported the State's theory that the killing was revengeful and deliberate, and was therefore admissible under the predecessor to § 19.06 to show his state of mind. See also *Scott v. State*, 150 Tex.Cr.R. 529, 202 S.W.2d 669 (Tex.Cr.App.1947) (threats and prior difficulties with third parties admissible to show the defendant's state of mind when he killed the deceased).

■ Under the facts of this case, we find that the admission of evidence regarding the above cited prior difficulties with Shanabarger were admissible under V.T.C.A. Penal Code, § 19.06 to show the appellant's state of mind when he killed Brett Butler. Therefore, it was not error for the appellant's trial counsel to allow this testimony without objection.

State's witness Sandra Curtis testified on cross-examination regarding another extraneous offense allegedly committed by the appellant. This testimony was not offered by the prosecutor, however, but was inadvertently elicited by an open-ended cross-examination question.

"Defense Counsel: Did Dan Ingham ever threaten you *at any time?*

"Witness: Yes, sir.

"Defense Counsel: When was that?

"Witness: It was one night at Scooner's Lounge.

"Defense Counsel: *What were the circumstances of that?"*

■ The resulting testimony concerned an incident where appellant "went to pull out his knife" when Sandra Curtis had refused to dance with him. Appellant cannot complain of testimony that he first elicited on cross-examination. *Christ v. State*, 480 S.W.2d 394 (Tex.Cr.App.1972). See also, *Mason v. State*, 472 S.W.2d 787 (Tex.Cr.App.1971); *Rogers v. State*, 420 S.W.2d 714 (Tex.Cr.App.1967). With regard to counsel's failure to object to the extraneous matter once it surfaced, we decline to hold that such actions which waive evidentiary

grounds may automatically be transformed into grounds for relief for ineffective assistance of counsel. See *Ex parte Ewing*, 570 S.W.2d 941 (Tex.Cr.App.1978).

■ On direct examination, Sandra Curtis also testified to another extraneous offense allegedly committed by the appellant. The testimony concerned the day that appellant's wife, Elsie Ingham, was moving back into the house formerly occupied by her and the appellant. The appellant had been compelled to vacate the house by a temporary restraining order. Sandra Curtis and others were present with Elsie Ingham when she went back to the house. Upon opening the door, they discovered that *someone* had turned on all the gas jets flooding the house with natural gas. Apparently this testimony was offered to show the previous relationship existing between the appellant and the deceased [his wife] under V.T.C.A. Penal Code, § 19.06. We agree with the Court of Appeals, however, that an important element of the testimony was missing. There was no showing that the appellant was in any way connected with the incident. The accused's participation in the extraneous offense is an essential showing for the admission of evidence regarding the extraneous offense. *McCann v. State*, 606 S.W.2d 897 (Tex.Cr.App.1980). Therefore, this evidence was inadmissible and should have been objected to by appellant's trial counsel.

■ At another point during the trial, the prosecutor cross-examined the appellant concerning another extraneous offense. This testimony related to an altercation between appellant and two employees of a local restaurant. The record shows that the State further called an employee of the restaurant in rebuttal of the defendant's denial of certain aspects of the incident. From a review of the record we find that evidence of this extraneous offense was not admissible, and should have been objected to by appellant's trial counsel.

■ Appellant next complains of his attorney's failure to object to hearsay testi-

mony of Sandra Curtis. Curtis testified that she was told by Phillip Rucker [appellant's neighbor] that appellant had threatened Elsie Ingham with a shotgun. The testimony was hearsay, and should have been objected to by appellant's trial counsel. We find, however, that Phillip Rucker, who witnessed the incident between appellant and his wife, testified at trial during the State's case-in-chief. Evidence of the incident was admissible under V.T.C.A. Penal Code, § 19.06, to show the previous relationship between the appellant and the deceased [his wife], and any error incurred by Curtis' improper hearsay testimony was rendered harmless by the declarant's repetition.

The last evidence complained of concerns the rebuttal testimony of two law enforcement officers regarding oral statements made by the appellant after the shooting. While at the hospital awaiting treatment for his own wounds, the two officers informed appellant that he was under arrest for the murder of his wife. The officers read appellant his *Miranda*[6] warnings and asked him if he understood those rights. He responded that he did understand his rights and that he would talk to them. The appellant then made various inculpatory statements concerning the killing of his wife. The questioning ceased when appellant told the officers that he did not want to talk anymore.

Appellant asserts that his attorney should have objected to testimony regarding these statements, as it is undisputed that the provisions of Article 38.22, § 3, V.A.C.C.P., were not complied with. The State, however, offered the statements under Article 38.22, § 5, as bearing on the credibility of the accused as a witness. The statements were offered only to rebut the defendant's contention that he did not remember committing the killing of his wife. The Court of Appeals held that the statements were not admissible under our holding in *Alfaro v. State*, 638 S.W.2d 891 (Tex.Cr.App.1982). While this is certainly correct, we note that our decision in *Alfaro*

was not available to defense counsel during the trial of this case (in 1980), and he cannot be faulted for failure to object on a non-existent ground.

The Court of Appeals also found that there was a question concerning the voluntariness of these statements, as neither law enforcement officer testified that appellant agreed to waive his rights. As noted earlier, appellant was informed of the charges against him, and he was read the *Miranda* warnings. Appellant then stated that he understood his rights and that he would talk to them. The determination of whether the defendant knowingly and voluntarily decided to forego his right to remain silent and to the assistance of counsel is based on the totality of the circumstances. The waiver need not be express but may be found in the circumstances surrounding the confession. *Harville v. State*, 591 S.W.2d 864 (Tex.Cr.App.1979). Given these insights we cannot say that counsel's failure to object was such an act of omission as to amount to ineffective assistance of counsel, notwithstanding appellant's medical condition at the time of the police interview. Moreover, the record reveals that the first officer at the scene of the Brett Butler residence was told by the appellant "to go over to 1009 East Polk [appellant's residence] because I've just killed my wife." The statements made by appellant in the hospital were merely cumulative of this res gestae declaration, which was properly admitted at trial without objection. We perceive no error.

We are left then with two complained of actions that we agree were errors on the part of appellant's trial counsel; counsel's failure to object to evidence of the gas jet incident and failure to object to evidence of the altercation at the restaurant. Did these acts of omission render his assistance ineffective? As we proceed, we are mindful of the recent Supreme Court case of *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court enunciated

---

**6.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

a two-pronged test to determine whether counsel was ineffective in his assistance at trial. To paraphrase, the defendant must first show that counsel's performance was deficient, i.e., that his assistance was not "reasonably effective." Second, and assuming the defendant has first shown ineffective assistance, the defendant must affirmatively show prejudice. That is, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. We need not analyze this case in light of the two-pronged *Strickland* test, however, because we do not find that appellant's counsel was ineffective as our prior decisions construe that term or that he was not "reasonably effective" as the Supreme Court construes that term.

The right to effective assistance of counsel merely ensures the right to reasonably effective assistance. *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980). The constitutional right to counsel does not mean errorless counsel whose competency or accuracy of representation is to be judged by hindsight. *Prior v. State*, 540 S.W.2d 723 (Tex.Cr.App.1976). Indeed, judicial scrutiny of counsel's performance must be highly deferential, and every effort made to eliminate the distorting effects of hindsight. *Strickland*, supra — U.S. —, 104 S.Ct. at 2065. An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. *Weathersby v. State*, 627 S.W.2d 729 (Tex. Cr.App.1982); *Cude v. State*, 588 S.W.2d 895 (Tex.Cr.App.1979).

Upon review of the totality of the representation, we hold that appellant has failed to demonstrate that his counsel's actions amounted to ineffective assistance of counsel. The record reflects that appellant's counsel consulted with his client regarding the charges against him and any possible defense. He obtained a psychiatric examination of the appellant, exploring the possibility of an insanity defense. Appellant's counsel filed timely applications for jury punishment and for probation; obtained the State's agreement to consolidate the cases for trial; moved for discovery of the criminal records of State witnesses; and filed successful motions for continuance in order to prepare more fully for the case. At trial, appellant's counsel conducted extensive cross-examination of all the witnesses. He also sought and received jury charges on the issue of sudden passion in both cases, and received a verdict of voluntary manslaughter in the killing of Elsie Ingham. The fact that appellant's counsel made mistakes at trial, and other counsel might have tried the case differently, does not show ineffective representation. Appellant has failed to establish the initial showing of ineffective assistance of counsel.

We further find, viewing the evidence as a whole, that the prejudicial impact of the State's action in offering the admittedly inadmissible evidence of two extraneous matters was not of a sufficient degree to constitute an unfair trial.

Accordingly, the judgment of the Court of Appeals is reversed and the cause is remanded to that court for consideration of appellant's other grounds of error not previously addressed by that court. It is so ordered.

ONION, P.J., and TEAGUE, J., concur in the result.

CLINTON, Judge, dissenting.

The majority says that "appellant's sole defensive theory at trial for both slayings was sudden passion," but nowhere in the seven page opinion of the Corpus Christi Court of Appeals is there the slightest suggestion that appellant advanced such a defensive theory. I find it odd that the court of appeals failed to see that. The reason most assuredly is that the State did not so contend before that court. Rather, it argued that Shanabarger and Curtis were "victims" with status equal to "the de-

ceased" for purposes of § 19.06. In short, the State has now changed its position.

In its petition for review and in its brief the State asserts that when his wife told him that she was having an affair with Brett Michael Butler, "appellant then, *allegedly in a fit of uncontrollable passion,* stabbed his wife eleven times, more or less, and proceeded to the Butler residence *to kill her paramour.*" [1] It does not point to any page in the record for testimony to support the underscored assertions. On the other hand, appellant responds that "no such thing appears in the record," explaining that his testimony was:

> "He 'guessed' he just about went crazy. He could recall nothing else that may have occurred, and remembered only waking up in the hospital. (S/F 421–423)."

Similarly, having carefully read its petition and brief on original submission, I have yet to find an exposition of the "State's theory of the case" like the majority opinion explicates, to wit: that appellant went to the Butler residence to kill Ralph Shanabarger and Butler was killed "because he was in the wrong place at the wrong time." (P. 506).[2] The State does say that "[s]ince Appellant also tried to kill Shanabarger and Curtis when he killed Butler, his motive and defensive theory are clearly placed in issue, and are legitimately challenged by evidence of prior difficulties with these two other intended victims." It relies on *Ruiz v. State,* 523 S.W.2d 691 (Tex.Cr.App.1975), as does the majority.

In *Ruiz* the accused implied by his testimony that he and deceased had separated because she was having an affair with another man, and he denied raping the daughter of deceased; according to the Court he was attempting to show that his act in shooting deceased was "done in sudden passion or while he was rendered insane by the deceased's affair." However, the daughter testified that extraneous offense

was the cause of the termination of the relationship between Ruiz and her mother, as opposed to his testimony that it was for an entirely different reason. The court found the testimony of the daughter was admissible "to rebut the testimony the appellant offered to show his relationship with the deceased and his state of mind at the time the deceased was shot," *id.,* at 693.

In *Scott v. State,* 150 Tex.Cr.R. 529, 202 S.W.2d 669 (1947), also cited by the majority, an extended difficulty with the Stark family lead up to a confrontation between the Scotts and the deceased Jesse Singleton, and the State was permitted "to show the bitter feeling which appellant himself had against the Starks, in whose behalf Singleton appeared," *id.,* 150 Tex.Cr.R. 529, 202 S.W.2d at 670. The Court found that bitter feeling "would naturally be imputed to [Scott] for Singleton," *ibid;* it cited and quoted from 22 Tex.Jur. 767–768:

> "A previous difficulty between the defendant and a third person may be proved if it led up to the killing, or involved the deceased in any way, or tends to reveal the defendant's motive or state of mind. But if the difficulty was in no way connected with the homicide, evidence of it is inadmissible."

Though the Corpus Christi Court of Appeals cited authorities that are not directly in point, its assessment of the situation in the case at bar seems correct, *viz:*

> "With regard to the alleged acts of misconduct against Curtis and Shanabarger, section 19.06 is not applicable, because the facts related were not relevant to the killing nor were they relevant to the previous relationship that existed between the appellant and either of the victims."

654 S.W.2d at 518.

The majority would have it that such evidence was admissible under § 19.06 "to

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. The theory that the majority says was "advanced by the prosecution in closing argument" to the jury is not iterated here in writing.

show the appellant's state of mind when he killed Brett Butler," but does not explain how the one is probative of the other. The sudden passion claimed in *Ruiz* was rebutted by showing the killing of his former lover was motivated by revenge for what *she* had done to him, yet the State is not contending that Butler had done anything to offend appellant. In *Scott* his "bitter feeling" toward the Starks was perceived to extend to Singleton when he stood off Scott in their behalf. Neither situation is said by either the State or the majority to be presented here. We are left to wonder how prior difficulties with Curtis and Shanabarger had any bearing on appellant's state of mind in killing Butler.

Of course, as appellant concedes, testimony as to his subsequent violent acts against them was admissible. But they are neither "the deceased" nor "victims" of either killing for which appellant was being tried, so his state of mind relative to them was never an issue in the case. Thus, prior acts of misconduct toward Curtis and Shanabarger were not relevant. And plainly that testimony fails the *Albrecht* test: "The test for admissibility of any type of evidence is whether the probative value of such evidence outweighs its inflammatory aspects, if any." *Albrecht v. State*, 486 S.W.2d 97, 99 (Tex.Cr.App.1972).

The ultimate issue *in this cause* is whether ineffective assistance of counsel denied appellant a fair trial. The court of appeals found appellant did not have reasonably effective assistance and, in effect, that the prosecution took advantage of the situation "to spend at least half its time providing the jury with details of various instances of extraneous prior misconduct on the part of the accused which were inadmissible and unnecessary." Introducing such extraneous transactions is "inherently prejudicial," *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Cr.App.1983).

Because this Court does not affirm the judgment of the Corpus Christi Court of Appeals, I respectfully dissent.