# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00654-CR

**Sabrina Gaines, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT NO. 0993343, HONORABLE TOM BLACKWELL, JUDGE PRESIDING

A jury found Sabrina Gaines guilty of eight counts of forgery and assessed as punishment eight concurrent two-year terms of confinement in state jail. On appeal, she contends that she was denied her constitutional rights when the prosecutor asked about a leg brace she was wearing and her counsel did not object. We will affirm the judgment.

Several witnesses testified to establish the case against Gaines. Andreas Castro testified that his checkbook was stolen and that seven checks were written on his account payable to Gaines; he denied writing the checks, authorizing the checks, or even knowing Gaines. Paula Tisdale testified similarly about a check written on her account payable to Denise Chapman; she denied writing the check, authorizing it, or knowing Gaines or Chapman. Rami Daass worked for the Conoco station that cashed the checks. He testified that the store took the check casher's

identification and thumb print. The owner-manager of the Conoco, Adam Abou-Hamdan, said he saw Gaines sign her name to several checks and sign "Denise Chapman" on another. When the checks were returned because payment had been stopped, he convinced Gaines to return to the store on the pretext of having a pager she had obtained at the store reprogrammed. When she returned, Daass called police, who arrested Gaines for forgery. A police fingerprint specialist testified that fingerprints on seven of the checks matched Gaines's fingerprints; the smudging of the fingerprint on the eighth check prevented a positive identification.

Gaines testified essentially that everyone involved in the check cashing was involved in the scam. She said that she knew Castro and Chapman because they had sex and used cocaine at Gaines's house. She said Castro gave his checkbook to Gaines's boyfriend, Claude Green, in exchange for crack cocaine. Green directed her to cash checks from Castro's checkbook. Gaines said the Conoco owner and employees knew they were cashing illegal checks and would take a percentage for themselves. Gaines disputed the testimony regarding the chain of events on the day she was arrested. She said Chapman attempted to cash a check, but the police arrested Gaines after Daass mistakenly identified her, rather than Chapman, as the person who attempted to pass the check. She also said the pager belonged to Green and that she did not have it when she was arrested.

Gaines also testified about her criminal and medical history. She admitted on direct examination that she had been incarcerated for burglary of a habitation. She also testified that her mental and emotional problems led to numerous suicide attempts and required numerous medications. She testified that, while on a work detail in prison, her left leg had been crushed, leaving her with a

limp and various other lingering difficulties; this testimony in part led to the following exchange on cross examination:

Q. [by the prosecutor] And you indicated when you were speaking with [defense counsel] that you have something wrong with your leg?

A. [by Gaines] Yes, sir.

Q. And it's your left leg?

A. Yes, sir.

Q. And I noticed a moment ago when you were walking there was a brace on your right leg?

A. Yes, sir.

Q. Okay. My understanding is that brace is unrelated to any kind of medical condition, am I correct?

A. Yes, sir, this brace is for the purpose of me being here.

The jury found Gaines guilty of forgery on all eight counts.

Gaines contends on appeal that the attention called to the brace on her leg by the prosecutor's questioning led to deprivation of several of her constitutional rights. She contends that, when the prosecutor asked about the brace, she was deprived of her right to the presumption of innocence. She contends that her counsel's failure to object to the prosecutor's questions about the brace deprived her of her right to effective counsel. Gaines does not challenge any action by the district court. Though both points of error arise from the use of the leg brace, she does not challenge

the decision to use the leg brace.[1]  Rather, she challenges the prosecutor's calling attention to the brace and defense counsel's failure to object to that action.

By her first point of error, Gaines alleges that the last question by the State quoted above deprived her of her right to a presumption of innocence.  Gaines did not object to either the question or the answer.  Failure to object can waive violations even of constitutional rights.  Tex. R. App. P. 33.1(a)(1); *see Estelle v. Williams*, 425 U.S. 501, 508 (1976) (objection to forced wearing of jail uniform waived); *Thompson v. State*, 514 S.W.2d 275, 278 (Tex. Crim. App. 1974) (trial courts must set out basis for requiring restraints upon objection); *see also Russell v. State*, 665 S.W.2d 771, 777 (Tex. Crim. App. 1983) (constitutional rights other than right to jury trial can be waived absent objection).  We conclude that Gaines waived this error.[2]  Accordingly, we overrule point one.

Trial counsel's failure to object to the prosecutor's question regarding the brace is the basis for Gaines's argument that her counsel was ineffective.  In considering this second point of error, we will examine whether counsel's conduct failed to meet an objective standard for reasonable performance and whether that failure deprived the appellant of a fair trial.  *See Strickland v. Washington,* 466 U.S. 668, 687-88; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

---

[1]  There is no indication that the court ordered the use of the leg brace, nor is there any explanation of who decided she should wear it or why.  There is, however, no claim in the trial or appellate courts that the brace was medically necessary for physical support.  We also note that there is no detailed description of the brace or of any attempts to conceal it in the record.

[2]  To the extent Gaines challenges the placing of the leg brace on her, we conclude that she waived that error by failing to raise any objection at trial to the use of the restraint or the manner in which it was used.

We look at the totality of the representation. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex. Crim. App. 1985); *Mayhue v. State*, 969 S.W.2d 503, 510 (Tex. App.—Austin 1998, no pet.). There is a strong presumption that counsel provided adequate assistance and made all the significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. Counsel is allowed wide latitude within reasonable professional standards to make tactical decisions. *Id.* We generally will not speculate as to trial strategy. *Mayhue*, 969 S.W.2d at 511. The representation need not be free of error. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Though numerous instances of failing to object to harmful inadmissible evidence could show ineffective assistance, an isolated failure does not necessarily render counsel ineffective. *See Weathersby v. State*, 627 S.W.2d 729, 730 (Tex. Crim. App. 1982). Finally, the client must show a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Mayhue*, 969 S.W.2d at 511.

Initially, we note that it is not clear that counsel erred by not objecting. The prosecutor's question, at least literally, sought only to exclude medical reasons for creating the need for the brace; the practical intent and effect of excluding medical reasons, however, may have been to highlight other concerns, such as public safety or escape prevention. There is no direct evidence of why the prosecutor asked this question, why Gaines's attorney did not object to the question about the brace, or what the jury thought about the brace. Gaines's attorney may reasonably have determined that not objecting to the question was the better tactic. By not objecting, the attorney avoided calling attention to the question and answer. The attorney also may have decided that Gaines would get sympathy if the jury inferred that she was required to wear the leg brace either to protect

5

her from herself or for security reasons that the jury deemed spurious because none of the testimony of her past or present indicated physical violence to others.

The remainder of counsel's performance appears reasonably effective; Gaines alleges no other deficiencies. Counsel participated actively in the trial, making numerous pretrial motions, asking questions during voir dire, examining and cross-examining witnesses, and arguing on her behalf. We conclude that Gaines has not shown that counsel's performance was unreasonable.

Even if Gaines had shown counsel's performance was unreasonable, we would conclude that Gaines has not shown a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. There is no showing that whatever the jury believed about her leg brace tipped the scale toward conviction, weighted as that scale was with the testimony of Gaines and others regarding Gaines's role in the check writing and Gaines's past offenses.[3] The testimony about her part in the proceedings supported the conviction. The testimony about her past undermines her credibility in the same manner as any conclusions the jury might draw about the need for a leg brace—particularly in the absence of any testimony that she was a violent person. Because Gaines has shown neither unreasonable performance by counsel nor a reasonable probability that such performance prevented an acquittal or lesser sentence, we overrule point two.

We affirm the judgment.

---

[3] The testimony about Gaines's emotional problems, while irrelevant to the commission of the crime, supported inferences that the brace was designed to restrain Gaines for reasons other than her guilt or defense of public safety.

6

_____

Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed:   September 14, 2000

Do Not Publish