# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00764-CR
NO. 03-05-00765-CR

**Rene Alveiro Droin, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
NOS. 57581 & 57582, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After pleading guilty to the offenses of indecency with a child by contact and possession of child pornography,[1] at the punishment phase, appellant Rene Alveiro Droin advised his counsel that he wished to testify. After Droin testified, the trial court assessed punishment at twenty years for the indecency offense and ten years for the pornography offense. On appeal, appellant contends that his trial counsel rendered ineffective assistance of counsel for allowing appellant to testify unprepared, and for failing to confer with appellant and to fully investigate the case. We affirm the judgments of conviction.

---

[1] *See* Tex. Pen. Code Ann. §§ 21.11, 43.24 (West 2003).

# BACKGROUND

On March 6, 2005, Evelyn Rivera returned home to find the appellant, her live-in boyfriend, seated on the floor with her seven-year-old daughter. Appellant was showing her an image of child pornography on a laptop computer. Rivera then learned from her daughter that appellant had touched her daughter inappropriately. Rivera reported the incident to the Killeen Police Department. During the course of the investigation, Killeen Police Detective Ronnie Supak recovered a computer disc containing pornographic images.

After appellant was indicted for the offenses of indecency with a child and possession of child pornography, he retained attorney Charles Montgomery to represent him. Montgomery represented appellant at a pre-trial conference on May 19, 2005. Appellant then sought to discharge Montgomery. At a hearing to discharge Montgomery, appellant told the court that "I've asked Mr. Montgomery to relieve himself from my case and he refused to." Montgomery insisted that he should continue with pretrial motions until new counsel was appointed. The trial court inquired:

> And so, Mr. Droin, that's the question now is, you know, I don't want to proceed if you—it's your life, your freedom that's at stake. You've got a couple of cases here. They are second-degree felonies, 2 to 20 years in the penitentiary and a fine up to $10,000 on each case. Mr. Montgomery has been hired by you to represent you but now you're telling me before we start that you don't want him as your lawyer.

Appellant advised the court that he had refused to meet with his attorney and sought his withdrawal. Over Montgomery's objection, the trial court relieved Montgomery, determined appellant was indigent, and appointed new counsel.

On August 23, 2005, after consulting with appointed counsel, appellant entered pleas of guilty in both cases. Prior to accepting the pleas, the trial court admonished appellant as to the

range of punishment in both cases. Appellant specifically acknowledged that he was pleading guilty without a plea bargain and that he understood the range of punishment available to the court. Defense counsel advised the court that he had filed an application for deferred adjudication with the court. The court inquired:

[Court]: Have you had enough time to go over both of your cases with your lawyer?

[Appellant]: Yes, Your Honor.

[Court]: Are you satisfied with his representation of you?

[Appellant]: Yes, Your Honor.

A judicial confession, signed by appellant, was admitted in both cases in support of appellant's pleas. The trial court accepted appellant's pleas and proceeded to sentencing.

The State called three witnesses to testify concerning the appropriate punishment to be imposed. Detective Supak testified about the computer disc recovered along with the laptop computer. In response to cross-examination by appellant's counsel, Supak agreed that appellant had cooperated with the officer's investigation. Rivera then testified about catching appellant showing pornography to her daughter and her daughter's outcry that appellant had touched her inappropriately. She testified that both she and her daughter wanted appellant to go to jail. The daughter's father testified that he had been supportive of his daughter throughout the incident and that he thought appellant should receive the maximum sentence. Prior to sentencing, defense counsel urged the court:

3

Your Honor, I was appointed back in March or April to represent Rene. I visited with him a number of times in the Bell County Jail. And he has been continually in the Bell County Jail for 171 days. I discussed with him his history and it is correctly reflected in the presentence investigation report. The fact that he does not have a criminal record, he's got a good military record, he served in Iraq. His unit has been redeployed and he has some ill feelings about not being able to go with his unit.

. . . .

You will notice that the presentence investigation is quite thorough. There is a substance abuse questionnaire which in my mind is really a personality profile and it is most positive toward Rene. One item that caused me to question was, was stress coping. If I was in Rene's shoes, my stress coping score would probably be on the back of that page, it would be so high.

He is eligible for a deferred adjudication consideration. I would ask that the Court consider that.

The prosecutor then responded that probation was not appropriate in this type of case: "This man purposely moved into a house where he had a girlfriend, showed child pornography to a seven-year-old little girl and changed her life forever." The prosecutor argued that "it doesn't get any worse than showing a seven-year-old child pornography and then touching her inappropriately," and that "[t]he reason this stopped is because he got caught in the act." She urged the court to impose the maximum penalty because "he deserves every bit of it" and "[h]e's too dangerous to give him a chance to hurt somebody else."

At the close of the prosecutor's argument, defense counsel advised the court that appellant "has just advised me that he desires to relinquish his rights against self incrimination and desires to testify on his own behalf in punishment." After he was sworn, appellant testified in response to questioning from his counsel:

4

[Defense Counsel]: Rene, have I advised you of your constitutional right, Fifth Amendment right against self-incrimation?

[Appellant]: Yes.

[Defense Counsel]: Have I advised you that that is an absolute right that no one can require you to testify under oath?

[Appellant]: Yes.

[Defense Counsel]: Have I advised you that if you give up that right, then you must answer all questions truthfully and that not only I, but the judge and the State's attorney in this case will ask you questions regarding this conduct?

[Appellant]: Yes.

[Defense Counsel]: Did I advise you that in my opinion I felt it would be best if you maintained your constitutional right against self-incrimination?

[Appellant]: Yes.

[Defense Counsel]: Did you advise me just now that you wish to give up that right and testify?

[Appellant]: Yes.

Appellant then testified that the disc that was seized could not be viewed on the laptop and that he had intended to dispose of the disc in the months following his return from service in Iraq but had forgotten to do so. He testified that the image that was on the laptop when Rivera entered the room was on an e-mail message, rather than the disc, and that he had not recognized the message and opened it accidently. He claimed that he had taken a medication and fallen asleep, only to wake up with the girl beside him. He stated that the child started tickling him and wrestling with him. Appellant then suggested that he had been abused as a child and admitted, "I would never do

this to anybody, you know, never bring it up again and I never done it until this particular point that now I have no idea why I did what I did."

On cross-examination, appellant admitted to the possession of the pornography found on the disc but insisted that he had intended to dispose of it and had forgotten he had it. He testified that he never showed the child any images, but that she "happened" to see them. The following testimony then occurred:

> [State]: Unless you were trying to get her a little excited because you told Detective Supak that you felt that she was getting sexually excited by everything that you were doing, didn't you?
>
> [Appellant]: Yes, by the time I realized I was doing wrong, I was not consciously in control.

Appellant also testified that he was on prescription pain killers and had recently changed his medications. During one exchange, the prosecutor rebuked appellant for appearing to find something "funny," which appellant denied. The trial court then assessed appellant's punishment at twenty years for the indecency charge and ten years for possession of child pornography.

Appellant retained Montgomery, his original defense counsel, to pursue an appeal. Appellant filed motions for new trial asserting ineffective assistance of counsel. At the hearing on appellant's motions, Montgomery argued that appellant was not contesting guilt, but that his trial counsel should have prepared him to testify at the punishment phase and there was mitigating evidence that should have been developed and presented by his trial counsel. After a two-day hearing, the trial court denied the motions.

6

## ANALYSIS

Appellant contends he received ineffective assistance of counsel because counsel failed to prepare him to testify at sentencing and allowed him to be impeached by the State, and further failed to conduct an independent investigation of the facts and to interview prospective witnesses in order to present mitigating evidence at the punishment phase.

We evaluate ineffective assistance of counsel claims under the two-part test formulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring a showing of both deficient performance and prejudice. To prove ineffective assistance, appellant must show: (1) that trial counsel's representation was deficient, falling below the standard of prevailing professional norms; and (2) a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Id*. at 687-92; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Salinas*, 163 S.W.3d at 740. To defeat this presumption, "any allegation of ineffectiveness must be firmly founded in the record," and the record must affirmatively demonstrate the meritorious nature of the claimed ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

We often find direct appeal to be an inadequate vehicle for raising such a claim because the record is generally undeveloped. To evaluate counsel's performance, which we review with great deference and without the "distorting effects of hindsight," *see Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984), counsel's reasons for acting or failing to act, or counsel's strategic choices, must appear in the record. *See Thompson*, 9 S.W.3d at 813-14. Without specific explanations for counsel's decisions, the record does not contain sufficient information to evaluate

7

an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813-14 (observing that when the record contains no explanation for counsel's decisions, an appellate court should be cautious in deciding whether the "motivation behind counsel's actions" was "of strategic design or the result of negligent conduct").

The court of criminal appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent such an opportunity, we have been instructed that we are not to find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We further reason that the opportunity to be afforded counsel will shed light as well on the rationale for the various strategic choices made by counsel, and whether those choices were well-reasoned or ill-conceived.

Here, appellant's trial counsel was not afforded an opportunity to respond to the concerns raised in the motions for new trial or on appeal. Appellant made no attempt to subpoena or call trial counsel to testify at the hearing. Rather, appellant asserted that his trial counsel was lulled into accepting the plea and then ambushed at the hearing when the prosecutor sought a maximum sentence. Appellant also sought to show at the hearing that his counsel failed to "explore the issue" of whether appellant's medications played a role in his crime. He produced witnesses to testify regarding the possible effects of the medications.

Robert Outten, a drug and alcohol counselor who had been retained by Montgomery when he was initially representing appellant, testified that the drugs may interact in such a way as

to enhance their effects. He also suggested that appellant's own sexual abuse as a child might have had an effect on him. Captain David Peters, a chaplain who visited appellant in jail, testified that appellant had expressed remorse, which might have been relevant at sentencing. A military witness testified to appellant's exemplary military record. But this was a witness appellant had called on the night of the offense, telling him that he had "done the unthinkable and that he was being arrested and he was going to jail for a long time." Appellant's brother and mother also testified at the hearing. Both stated they would have testified that appellant had been abused by a stepfather as a child, that he would not have done the same to another child, and that he had expressed remorse.

These issues were all before the court through appellant's testimony and the presentence report. The trial court noted the evidence regarding the alleged childhood sexual abuse in assessing sentence. What was not before the court was the testimony of trial counsel or any evidence presented concerning the strategic choices made—or not made—by trial counsel. In contrast, what was before the court was appellant's decision—against the advice of trial counsel—to testify. The record shows that—even in hindsight—trial counsel exercised a reasonable trial strategy in recommending a guilty plea and urging deferred adjudication. Appellant refused to follow his counsel's advice and insisted on testifying. The sentence may well have resulted from appellant's failure to follow his counsel's advice rather than any strategic missteps made by counsel.

There is no evidence of ineffective assistance firmly grounded in the record. Appellant has not met his burden to show that counsel's performance was deficient, nor has appellant overcome the presumption of effective assistance.

Even assuming appellant has shown that trial counsel's performance was deficient, he has failed to show that the alleged deficiency sufficiently prejudiced his defense. *See Strickland*,

9

466 U.S. at 687. The substance of the evidence at the hearing was before the trial court either through appellant's own testimony or the presentence report. Appellant pleaded guilty in both cases, judicially admitting that he had indecent contact with the seven-year-old child and that he possessed child pornography. The issue before the court was solely one of punishment. Appellant failed to show that the punishment assessed by the court would have been different had trial counsel pursued the strategy now advanced by his original lawyer. *See id*. at 691-92.

## CONCLUSION

Because appellant failed to show either deficient performance by trial counsel or a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance, and the record fails to affirmatively demonstrate the meritorious nature of his claim, we overrule appellant's points of error and affirm the judgments of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: July 28, 2006

Do Not Publish