TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00764-CR

NO. 03-05-00765-CR






Rene Alveiro Droin, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NOS. 57581 & 57582, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 After pleading guilty to the offenses of indecency with a child by contact and
possession of child pornography, (1) at the punishment phase, appellant Rene Alveiro Droin advised
his counsel that he wished to testify. After Droin testified, the trial court assessed punishment at
twenty years for the indecency offense and ten years for the pornography offense. On appeal,
appellant contends that his trial counsel rendered ineffective assistance of counsel for allowing
appellant to testify unprepared, and for failing to confer with appellant and to fully investigate the
case. We affirm the judgments of conviction.


BACKGROUND


 On March 6, 2005, Evelyn Rivera returned home to find the appellant, her live-in
boyfriend, seated on the floor with her seven-year-old daughter. Appellant was showing her an
image of child pornography on a laptop computer. Rivera then learned from her daughter that
appellant had touched her daughter inappropriately. Rivera reported the incident to the Killeen
Police Department. During the course of the investigation, Killeen Police Detective Ronnie Supak
recovered a computer disc containing pornographic images.

 After appellant was indicted for the offenses of indecency with a child and possession
of child pornography, he retained attorney Charles Montgomery to represent him. Montgomery
represented appellant at a pre-trial conference on May 19, 2005. Appellant then sought to discharge 
Montgomery. At a hearing to discharge Montgomery, appellant told the court that "I've asked Mr.
Montgomery to relieve himself from my case and he refused to." Montgomery insisted that he
should continue with pretrial motions until new counsel was appointed. The trial court inquired:


And so, Mr. Droin, that's the question now is, you know, I don't want to proceed if
you--it's your life, your freedom that's at stake. You've got a couple of cases here. 
They are second-degree felonies, 2 to 20 years in the penitentiary and a fine up to
$10,000 on each case. Mr. Montgomery has been hired by you to represent you but
now you're telling me before we start that you don't want him as your lawyer.


 Appellant advised the court that he had refused to meet with his attorney and sought
his withdrawal. Over Montgomery's objection, the trial court relieved Montgomery, determined
appellant was indigent, and appointed new counsel.

 On August 23, 2005, after consulting with appointed counsel, appellant entered pleas
of guilty in both cases. Prior to accepting the pleas, the trial court admonished appellant as to the
range of punishment in both cases. Appellant specifically acknowledged that he was pleading guilty
without a plea bargain and that he understood the range of punishment available to the court. 
Defense counsel advised the court that he had filed an application for deferred adjudication with the
court. The court inquired:


[Court]: Have you had enough time to go over both of your cases with your
lawyer?


[Appellant]: Yes, Your Honor.


[Court]: Are you satisfied with his representation of you?


[Appellant]: Yes, Your Honor.


A judicial confession, signed by appellant, was admitted in both cases in support of appellant's pleas. 
The trial court accepted appellant's pleas and proceeded to sentencing.

 The State called three witnesses to testify concerning the appropriate punishment to
be imposed. Detective Supak testified about the computer disc recovered along with the laptop
computer. In response to cross-examination by appellant's counsel, Supak agreed that appellant had
cooperated with the officer's investigation. Rivera then testified about catching appellant showing
pornography to her daughter and her daughter's outcry that appellant had touched her
inappropriately. She testified that both she and her daughter wanted appellant to go to jail. The
daughter's father testified that he had been supportive of his daughter throughout the incident and
that he thought appellant should receive the maximum sentence. Prior to sentencing, defense
counsel urged the court:


 Your Honor, I was appointed back in March or April to represent Rene. I
visited with him a number of times in the Bell County Jail. And he has been
continually in the Bell County Jail for 171 days. I discussed with him his history and
it is correctly reflected in the presentence investigation report. The fact that he does
not have a criminal record, he's got a good military record, he served in Iraq. His
unit has been redeployed and he has some ill feelings about not being able to go with
his unit.


 . . . .


 You will notice that the presentence investigation is quite thorough. There
is a substance abuse questionnaire which in my mind is really a personality profile
and it is most positive toward Rene. One item that caused me to question was, was
stress coping. If I was in Rene's shoes, my stress coping score would probably be on
the back of that page, it would be so high.


 He is eligible for a deferred adjudication consideration. I would ask that the
Court consider that.



 The prosecutor then responded that probation was not appropriate in this type of case:
"This man purposely moved into a house where he had a girlfriend, showed child pornography to
a seven-year-old little girl and changed her life forever." The prosecutor argued that "it doesn't get
any worse than showing a seven-year-old child pornography and then touching her inappropriately,"
and that "[t]he reason this stopped is because he got caught in the act." She urged the court to
impose the maximum penalty because "he deserves every bit of it" and "[h]e's too dangerous to give
him a chance to hurt somebody else."

 At the close of the prosecutor's argument, defense counsel advised the court that
appellant "has just advised me that he desires to relinquish his rights against self incrimination and
desires to testify on his own behalf in punishment." After he was sworn, appellant testified in
response to questioning from his counsel:


[Defense Counsel]: Rene, have I advised you of your constitutional right, Fifth
Amendment right against self-incrimination?


[Appellant]: Yes.


[Defense Counsel]: Have I advised you that that is an absolute right that no one can
require you to testify under oath?


[Appellant]: Yes.


[Defense Counsel]: Have I advised you that if you give up that right, then you must
answer all questions truthfully and that not only I, but the judge
and the State's attorney in this case will ask you questions
regarding this conduct?


[Appellant]: Yes.


[Defense Counsel]: Did I advise you that in my opinion I felt it would be best if you
maintained your constitutional right against self-incrimination?


[Appellant]: Yes.


[Defense Counsel]: Did you advise me just now that you wish to give up that right
and testify?


[Appellant]: Yes.



 Appellant then testified that the disc that was seized could not be viewed on the
laptop and that he had intended to dispose of the disc in the months following his return from service
in Iraq but had forgotten to do so. He testified that the image that was on the laptop when Rivera
entered the room was on an e-mail message, rather than the disc, and that he had not recognized the
message and opened it accidently. He claimed that he had taken a medication and fallen asleep, only
to wake up with the girl beside him. He stated that the child started tickling him and wrestling with
him. Appellant then suggested that he had been abused as a child and admitted, "I would never do
this to anybody, you know, never bring it up again and I never done it until this particular point that
now I have no idea why I did what I did."

 On cross-examination, appellant admitted to the possession of the pornography found
on the disc but insisted that he had intended to dispose of it and had forgotten he had it. He testified
that he never showed the child any images, but that she "happened" to see them. The following
testimony then occurred:


[State]: Unless you were trying to get her a little excited because you told
Detective Supak that you felt that she was getting sexually excited by
everything that you were doing, didn't you?


[Appellant]: Yes, by the time I realized I was doing wrong, I was not consciously in
control.



 Appellant also testified that he was on prescription pain killers and had recently
changed his medications. During one exchange, the prosecutor rebuked appellant for appearing to
find something "funny," which appellant denied. The trial court then assessed appellant's
punishment at twenty years for the indecency charge and ten years for possession of child
pornography.

 Appellant retained Montgomery, his original defense counsel, to pursue an appeal. 
Appellant filed motions for new trial asserting ineffective assistance of counsel. At the hearing on
appellant's motions, Montgomery argued that appellant was not contesting guilt, but that his trial
counsel should have prepared him to testify at the punishment phase and there was mitigating
evidence that should have been developed and presented by his trial counsel. After a two-day
hearing, the trial court denied the motions. 

ANALYSIS


 Appellant contends he received ineffective assistance of counsel because counsel
failed to prepare him to testify at sentencing and allowed him to be impeached by the State, and
further failed to conduct an independent investigation of the facts and to interview prospective
witnesses in order to present mitigating evidence at the punishment phase.

 We evaluate ineffective assistance of counsel claims under the two-part test
formulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), requiring a
showing of both deficient performance and prejudice. To prove ineffective assistance, appellant
must show: (1) that trial counsel's representation was deficient, falling below the standard of
prevailing professional norms; and (2) a reasonable probability that the result of the proceeding
would have been different but for trial counsel's deficient performance. Id. at 687-92; Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). There is a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance. Salinas, 163 S.W.3d at
740. To defeat this presumption, "any allegation of ineffectiveness must be firmly founded in the
record," and the record must affirmatively demonstrate the meritorious nature of the claimed
ineffectiveness. Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

 We often find direct appeal to be an inadequate vehicle for raising such a claim
because the record is generally undeveloped. To evaluate counsel's performance, which we review
with great deference and without the "distorting effects of hindsight," see Ingham v. State, 679
S.W.2d 503, 509 (Tex. Crim. App. 1984), counsel's reasons for acting or failing to act, or counsel's
strategic choices, must appear in the record. See Thompson, 9 S.W.3d at 813-14. Without specific
explanations for counsel's decisions, the record does not contain sufficient information to evaluate
an ineffective assistance claim. See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002);
Thompson, 9 S.W.3d at 813-14 (observing that when the record contains no explanation for
counsel's decisions, an appellate court should be cautious in deciding whether the "motivation
behind counsel's actions" was "of strategic design or the result of negligent conduct").

 The court of criminal appeals has said that "trial counsel should ordinarily be afforded
an opportunity to explain his actions before being denounced as ineffective." Rylander v. State, 101
S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent such an opportunity, we have been instructed that
we are not to find deficient performance unless the challenged conduct was "so outrageous that no
competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001); see also Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We further
reason that the opportunity to be afforded counsel will shed light as well on the rationale for the
various strategic choices made by counsel, and whether those choices were well-reasoned or ill-conceived.

 Here, appellant's trial counsel was not afforded an opportunity to respond to the
concerns raised in the motions for new trial or on appeal. Appellant made no attempt to subpoena
or call trial counsel to testify at the hearing. Rather, appellant asserted that his trial counsel was
lulled into accepting the plea and then ambushed at the hearing when the prosecutor sought a
maximum sentence. Appellant also sought to show at the hearing that his counsel failed to "explore
the issue" of whether appellant's medications played a role in his crime. He produced witnesses to
testify regarding the possible effects of the medications.

 Robert Outten, a drug and alcohol counselor who had been retained by Montgomery
when he was initially representing appellant, testified that the drugs may interact in such a way as
to enhance their effects. He also suggested that appellant's own sexual abuse as a child might have
had an effect on him. Captain David Peters, a chaplain who visited appellant in jail, testified that
appellant had expressed remorse, which might have been relevant at sentencing. A military witness
testified to appellant's exemplary military record. But this was a witness appellant had called on the
night of the offense, telling him that he had "done the unthinkable and that he was being arrested and
he was going to jail for a long time." Appellant's brother and mother also testified at the hearing. 
Both stated they would have testified that appellant had been abused by a stepfather as a child, that
he would not have done the same to another child, and that he had expressed remorse.

 These issues were all before the court through appellant's testimony and the
presentence report. The trial court noted the evidence regarding the alleged childhood sexual abuse
in assessing sentence. What was not before the court was the testimony of trial counsel or any
evidence presented concerning the strategic choices made--or not made--by trial counsel. In
contrast, what was before the court was appellant's decision--against the advice of trial counsel--to
testify. The record shows that--even in hindsight--trial counsel exercised a reasonable trial strategy
in recommending a guilty plea and urging deferred adjudication. Appellant refused to follow his
counsel's advice and insisted on testifying. The sentence may well have resulted from appellant's
failure to follow his counsel's advice rather than any strategic missteps made by counsel.

 There is no evidence of ineffective assistance firmly grounded in the record. 
Appellant has not met his burden to show that counsel's performance was deficient, nor has
appellant overcome the presumption of effective assistance. 

 Even assuming appellant has shown that trial counsel's performance was deficient,
he has failed to show that the alleged deficiency sufficiently prejudiced his defense. See Strickland,
466 U.S. at 687. The substance of the evidence at the hearing was before the trial court either
through appellant's own testimony or the presentence report. Appellant pleaded guilty in both cases,
judicially admitting that he had indecent contact with the seven-year-old child and that he possessed
child pornography. The issue before the court was solely one of punishment. Appellant failed to
show that the punishment assessed by the court would have been different had trial counsel pursued
the strategy now advanced by his original lawyer. See id. at 691-92.


CONCLUSION


 Because appellant failed to show either deficient performance by trial counsel or a
reasonable probability that the result of the proceeding would have been different but for trial
counsel's deficient performance, and the record fails to affirmatively demonstrate the meritorious
nature of his claim, we overrule appellant's points of error and affirm the judgments of conviction.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: July 28, 2006

Do Not Publish

1. See Tex. Pen. Code Ann. §§ 21.11, 43.24 (West 2003).