Affirmed and Memorandum Opinion filed January 11, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00689-CR

___________________

 

Sherman Theodore Lewis, Appellant

 

V.

 

the State of Texas, Appellee



 



 

On
Appeal from the 176th District Court

Harris County,
Texas



Trial Court Cause No. 1161346

 



 

 

MEMORANDUM OPINION

A jury found appellant Sherman
Theodore Lewis guilty of injury to an elderly person and the trial court
sentenced him to 35 years’ imprisonment.  His sentence was enhanced by two prior
felony convictions.  Lewis appeals his conviction contending that: (1) his
attorney rendered ineffective assistance at trial, and (2) there is
insufficient evidence to support the prior felony convictions used to enhance
his punishment.  We affirm.  

I

Sherman Theodore Lewis arrived at his parents’
apartment, where he had been living since being paroled, around 1:00 a.m. on
April 6, 2008.  After knocking on the door to be let in, a verbal altercation
broke out between the intoxicated Lewis and his father, Theodore Sherman, who
was upset because Lewis had not used his key.  The altercation soon turned
physical.  Lewis hit Sherman in the face, and when Sherman fell to the ground
Lewis kicked and stomped on him.  Shirley Sherman Lewis, Lewis’s mother,
attempted to intervene but Lewis either pushed her away or she fell to the
ground.  She then called police and was able to lock Lewis out of the apartment
until officers arrived.

Both of Lewis’s parents received injuries and were
taken to the hospital.  Sherman sustained a broken arm, bruises to his face,
chest and side, a bloody nose, and was still unable to fully close his hand
into a fist at trial.  He also testified to breathing problems and “eye
trouble” resulting from the blows he received to his face.  Sherman was 78 at
that time and, while not bound to a wheelchair, often used one because of back
problems.  Shirley Lewis sustained a cut to her foot that required stitches,
but Lewis was charged with injury to an elderly person only as to his assault
on Sherman.[1] 
    

At trial, defense counsel elicited testimony about
Lewis’s troubled childhood and a strained relationship with his father that
included Sherman allegedly shooting Lewis in the back with a shotgun or B.B.
gun—an incident Sherman denied but which Lewis and the rest of the testifying
members of the family agreed happened.  Lewis testified in his own defense and
admitted to the assault but said Sherman had pulled a knife on him.  

During trial, defense counsel also elicited testimony
from Sherman concerning Lewis’s parole status.  He did not object to Sherman
mentioning Lewis’s parole status, nor did he object when the responding police
officer also testified as to Lewis’s parole status.  He also did not object
when the prosecutor elicited testimony from Shirley Lewis concerning Lewis’s
childhood and adolescent criminal activity.  These failures to object largely
form the basis of Lewis’s ineffective-assistance-of-counsel claim.  Specifically,
Lewis complains defense counsel (1) failed to object, request an instruction to
disregard, and request a mistrial in response to the responding police
officer’s unresponsive testimony that Lewis was on parole; (2) introduced
evidence to the jury that Lewis was a habitual offender despite no evidence
other than his own admission that he was finally convicted of an offense; (3)
opened the door to evidence of Lewis’s childhood criminal activity; (4) failed
to object to the prosecutor’s mention of Lewis’s criminal history during  the
State’s closing argument; (5) agreed to stipulate to Lewis’s prior convictions
during the punishment phase without any evidence of judgments or sentences
relating to the convictions; (6) failed to file a pretrial motion in limine as
to Lewis’s criminal history and extraneous acts of misconduct; and (7) expressly
declined a jury charge on self-defense.  

Lewis also complains there is insufficient evidence
to sustain his habitual-offender status determined at the punishment stage of
his trial.  Although Lewis pleaded “true” to his two prior felony convictions,
he now complains that because no judgments or sentences were entered into
evidence it is unknown whether the convictions were final or if other
objectionable grounds existed that would have warranted their exclusion.  

II

An accused is entitled
to reasonably effective assistance of counsel.  Strickland v. Washington,
466 U.S. 668, 686 (1984); King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  In reviewing claims of ineffective assistance of counsel, we apply
a two-prong test.  See Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005) (citing Strickland, 466 U.S. at 687).  To establish
ineffective assistance, an appellant must prove by a preponderance of the evidence
that (1) his trial counsel’s representation fell below the standard of
prevailing professional norms, and (2) there is a reasonable probability that,
but for counsel’s deficiency, the result of the trial would have been
different.  Strickland, 466 U.S. at 687.  If a criminal defendant can
prove that trial counsel’s performance was deficient, he must still affirmatively
prove that counsel’s actions prejudiced him.  Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999).  To demonstrate prejudice, a defendant
must establish a reasonable probability that the result of the proceeding would
have been different if trial counsel had acted professionally.  Id.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App.
2001).  

When evaluating a claim
of ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  In making such an evaluation, any judicial review must be
highly deferential to trial counsel and avoid the distorting effects of
hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)
(citing Strickland, 466 U.S. at 689).  As such, there is a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.  Salinas, 163 S.W.3d at 740.  The appellant bears the burden
of proving by a preponderance of the evidence that counsel was ineffective.  Thompson,
9 S.W.3d at 813 (citing Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim.
App. 1984)).  To overcome the presumption of reasonable professional
assistance, any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  Thompson, 9 S.W.3d at 814.  Direct appeal is usually
an inadequate vehicle for raising such a claim because the record is generally
undeveloped.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005).  When the record is silent as to trial counsel’s strategy, we will not
conclude that defense counsel’s assistance was ineffective unless the
challenged conduct was “‘so outrageous that no competent attorney would have
engaged in it.’”  Id. (quoting Garcia v. State, 57 S.W.3d 436,
440 (Tex. Crim. App. 2001)).  Even when an appeals court found that the record
in an ineffective-assistance-of-counsel claim “reveal[ed] a total absence of
advocacy skills and [that] even the minimum effort expended on appellant’s
behalf was misguided,” the Court of Criminal Appeals refused to find
ineffective assistance of counsel on direct appeal because nothing in the
record proved counsel’s actions were not the product of an unreasoned or
unreasonable strategy.  Bone v. State, 77 S.W.3d 828, 834 (Tex. Crim.
App. 2002).  

We are unable to
determine from the record that Lewis received ineffective assistance of
counsel.  Because the record is largely undeveloped in identifying what trial
strategies, if any, were employed by defense counsel, we have no basis to say
Lewis’s attorney’s performance fell outside the wide range of acceptable
professional assistance.  See Salinas, 163 S.W.3d at 740.  The crux of
Lewis’s complaint is that defense counsel allowed evidence of Lewis’s parole
status, prior convictions, and childhood criminal activity into evidence
without objection.  The record reflects that Lewis’s parole status became known
to the jury through defense counsel’s cross-examination of Sherman.  When asked
if Lewis was living with his parents at the time of the incident, Sherman
responded, “When he got paroled that’s where he got paroled to.”  Defense
counsel did not object to this response, and, in fact, repeated it in his next
question when he asked, “He was paroled to your house?”  Lewis’s parole status
would later be raised by a testifying police officer, again without objection
from defense counsel.  Further, after defense counsel initiated lines of
questioning about Lewis’s childhood, the prosecutor asked Shirley Lewis about
Lewis’s childhood and adolescent criminal activity, which she said included
“driving a stolen car,” “robbing an ice cream truck” and stealing a wallet at
the hospital where she was working.  Defense counsel did not object.  

It was not until Lewis
testified that defense counsel would object to the attempted introduction of
prior felony convictions, at which time the court appeared to express surprise
by saying, “I kind of expected a motion in this regard before you ever started,”
and observed that “from the beginning of this case everybody’s been talking
about his parole and the fact that he has priors, and since I was kind of
curious about why we were doing that, but that cat’s out of the bag.”  Defense
counsel did not offer any explanation for his rationale in choosing not to file
a motion in limine or in choosing not to object to previous mention of Lewis’s
parole status or criminal history.    

The record provides some
indication of defense counsel’s strategy in supposedly opening the door to
testimony of Lewis’s childhood criminal activity.  During an earlier bench
conference following the prosecutor’s objection to the relevance of defense
counsel’s questions to Shirley Lewis about Lewis’s childhood, defense counsel
told the court there was “a long history of violence in this family I’m trying
to get into” in order to show that Sherman had “been abusive the entire time
since this kid was [six] years old.”  While it cannot be inferred with
certainty, this exchange tends to suggest defense counsel’s strategy may have
been to risk opening the door to Lewis’s childhood criminal activity to gain
the advantage of exploring a pattern of abuse directed toward Lewis throughout
his life.  But the record is not developed on this point and we will not
speculate as to counsel’s strategy.

The record also provides
at least some insight into Lewis’s complaint that defense counsel failed to
request a jury charge on self-defense.  The record in fact shows that defense
counsel did not merely fail to request the charge but affirmatively declined it. 
During the charge conference, the prosecutor asked the court if a self-defense
charge would be included, and defense counsel stated, “It is not my request to
have that specifically included.”  While the record here does not reflect
defense counsel’s rationale for declining such an instruction, it does show
defense counsel did not fail to request the instruction out of neglect. 
Rather, he made a conscious decision not to pursue the request.  This obviously
strategic choice requires we be highly deferential to trial counsel and avoid
the deleterious effects of hindsight absent a clear showing of the rationale
behind the choice.  See Ingham, 679 S.W.2d at 509.  

Although the record
provides some hints about why defense counsel did not request the self-defense
instruction, it does not decisively demonstrate defense counsel’s thinking or
strategy.  Moreover, the record is completely silent as to why he did not
object to testimony concerning Lewis’s parole status or the introduction of
some of Lewis’s prior criminal history and the prosecutor’s mention of the same
during the State’s closing argument.  It also does not address Lewis’s
complaint that defense counsel agreed to stipulate to Lewis’s convictions
during the punishment phase in the absence of evidence of any judgments or
sentences relating to those convictions.  Therefore, the evidence offered is
insufficient to rebut the presumption that defense counsel’s decisions were
reasonable.  See Thompson, 9 S.W.3d at 814.  Lewis’s first point is
overruled. 

III

            Lewis
next complains that the there is insufficient evidence to sustain the two prior
felony convictions used to enhance his punishment as a habitual offender.[2]  At trial, Lewis
pleaded “true” to two enhancement paragraphs acknowledging prior felony convictions
for robbery and credit-card abuse.  Nonetheless, he now complains that “there
is no proof of either enhancement and there is no evidence that either case was
final before this instant case.”  

            A
defendant who enters a plea of “true” to an enhancement paragraph in an
indictment cannot be heard to later complain the evidence is insufficient to
support the prior convictions.  Harvey v. State, 611 S.W.2d 108, 111
(Tex. Crim. App. 1981); O’Dell v. State, 467 S.W.2d 444, 447 (Tex. Crim.
App. 1971).  By pleading “true,” Lewis relieved the State of its burden of
proof to conclusively establish the existence and finality of the prior
convictions.  See Harvey, 611 S.W.2d at 111.  

Lewis does not contest
that he pleaded “true” to the two enhancement paragraphs. Instead, he argues we
should ignore his pleas in light of two cases providing that a defendant should
not be bound by his plea of “true” when the record affirmatively reflects that
a prior conviction was not final or should not have been used for enhancement
purposes.  See Sanders v. State, 785 S.W.2d 445, 448 (Tex. App.—San
Antonio 1990, no pet.) (holding a plea of “true” to an enhancement paragraph
cannot be used to enhance punishment when the record affirmatively reflects a
prior conviction was not final); Cruz v. State, No. 01-00-00463-CR, 2001
WL 1168273, at *2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2001, no pet.) (not
designated for publication) (holding a plea of “true” to an enhancement
paragraph cannot be used to enhance punishment when the record affirmatively
reflects the prior conviction was statutorily excluded from consideration as an
enhancement offense). 

Cruz is an unpublished case and has no
precedential value.  Sanders does not apply here because the record does
not affirmatively demonstrate, nor does Lewis argue, that either of the prior
convictions was not final or should not have been used to enhance his
punishment.  There is nothing on the face of the record in this case that
affirmatively demonstrates Lewis’s pleas of “true” could not be correct or that
either of his prior convictions could not be used to elevate him to habitual
offender status.  His complaint, at its core, is that the State did not provide
all the proof necessary to prove the enhancement paragraphs absent Lewis’s plea
of “true.”  However, Lewis’s decision to plead “true” relieved the State of
this burden.  See Harvey, 611 S.W.2d at 111.  Lewis’s second point is
overruled.  

* * *

For the foregoing
reasons, we affirm the trial court’s judgment.

                                                            

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Frost, and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1] Tex. Penal Code § 22.04.





[2] Lewis complains the evidence is both legally and
factually insufficient to sustain his status as a habitual offender for
sentencing purposes.  His appeal was filed before the Court of Criminal
Appeals’ decision in Brooks v. State, in which a majority of the judges
determined that the Jackson v. Virginia legal-sufficiency standard is
the only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt.  323 S.W.3d 893, 895
(Tex. Crim. App. 2010) (plurality op.) (Hervey, J., joined by Keller, P.J.,
Keasler, and Cochran, J.J.); id. at 926 (Cochran, J., concurring, joined
by Womack, J.) (same conclusion as plurality).  Accordingly, we review the
evidence under the standard set out in Jackson v, Virginia, and we do
not separately refer to legal or factual sufficiency.  See id. at 912
(plurality op.); Pomier v. State, No. 14-09-00247-CR, ___ S.W.3d ___,
2010 WL 4132209, at *2 (Tex. App.—Houston [14th Dist.] October 21, 2010, no
pet.).