**Opinion filed March 25, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00214-CR
_____

## JULIE LYNN LYMAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 19687B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Julie Lynn Lyman of possession of methamphetamine with intent to deliver in a drug-free zone (Count One), possession of marihuana in a drug-free zone (Count Five), and unlawful possession of a firearm by a felon (Count Six).[1]  Appellant entered pleas of true to the enhancement paragraph of each

---

[1]At the conclusion of the guilt/innocence phase, the State waived Counts Three and Four of the six-count indictment.

count. The trial court found the allegation of each enhancement paragraph to be true.

On the conviction for possession of methamphetamine with intent to deliver in a drug-free zone, the trial court assessed Appellant's punishment at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice. On the conviction for possession of marihuana in a drug-free zone, the trial court assessed Appellant's punishment at confinement for a term of two years in the State Jail Division of the Texas Department of Criminal Justice. On the conviction for unlawful possession of a firearm by a felon, the trial court assessed Appellant's punishment at confinement for a term of ten years in the Institutional Division of the Texas Department of Criminal Justice. The trial court ordered that the sentences are to run concurrently.

Appellant presents two issues on appeal. First, Appellant asserts that the trial court erred when it allowed the State to offer evidence of unadjudicated extraneous offenses. Second, Appellant contends that defense counsel provided ineffective assistance. We affirm.

*Background Facts*

Officer Marc Valentine is a narcotics agent in the Special Operations Division of the Abilene Police Department. Upon receipt of a tip that a female was selling methamphetamine and marihuana from a house at 910 Shelton Street in Abilene, Agent Valentine conducted surveillance of the property. He observed a vehicle approach the house and saw a man exit the vehicle and enter the house. The man returned to the vehicle, and the vehicle departed. Agent Valentine executed a traffic stop of the vehicle a few blocks away and arrested two people. Based on information received during that encounter, Agent Valentine obtained a search warrant for the house at 910 Shelton Street and executed the warrant later that day. The Shelton Street house is within 1,000 feet of Abilene High School.

While the search of the house was being executed, officers found and placed Appellant, Wesley Jefferson, and Justin Jones in custody and advised them of their rights. Jefferson surrendered a bag of marihuana, and during a subsequent search of Jefferson, police found him to be in possession of a substance that tested positive for methamphetamine. Appellant informed Agent Valentine that the house was hers, and she escorted him to her bedroom, where she surrendered some cigar boxes, a loaded .38 caliber revolver, and a safe that was under her bed. Another handgun was also discovered hanging on the headboard of Appellant's bedroom.

The cigar boxes and other containers found within Appellant's bedroom and home contained digital scales, packaging materials, methamphetamine, cocaine, and marihuana. A box of ammunition that was missing six rounds was found in Appellant's nightstand. The safe contained marihuana and cash. During the search, officers found a total sum of $11,204. An envelope marked with the word "work"— a slang term that officers understood was a reference to methamphetamine— contained methamphetamine. Officers also found notes or "ledgers" that identified dates and dollar amounts and an accordion file with a "payroll" tab. Agent Valentine believed that Appellant was unemployed at the time of the search. According to Agent Valentine, the ledger and accordion-file notations also utilized slang terminology for marihuana, crack cocaine, and methamphetamine and were "indicative of a ledger for distribution of drugs."

Agent Valentine explained that indicators of a person's intent to deliver contraband may include possession of contraband in bulk or in a quantity greater than is typical for personal use, the presence of packaging materials for distribution, scales or a weighing mechanism, and large sums of cash. Photographs of Appellant, Jefferson, Jones, the interior and exterior of the house, the items from the cigar boxes and safe, the guns, and additional contraband and other items found during the search were admitted into evidence.

Herman Carrel is a forensic scientist with the Texas Department of Public Safety. Carrel testified that the substance taken from Jefferson tested positive for methamphetamine and had a net weight of 0.16 grams. The substance of thirteen containers found within the house tested positive for methamphetamine and had a combined net weight of 4.28 grams.

After the State rested its case-in-chief, Appellant testified on her own behalf during the guilt/innocence phase of trial. She acknowledged that the Shelton Street house was hers but asserted that she had not been staying there. She claimed that Jones was living in one of the bedrooms of her home and that Jones and Jefferson were performing work on the house. Appellant explained that she had arrived at the house ten minutes before police arrived with the search warrant.

Appellant testified that she was cooperative with Agent Valentine and that she directed him to her bedroom. She further testified that she informed Agent Valentine that she wished to surrender some items that she had found earlier that day in Jones's bedroom. She claimed that Jefferson had helped her move those items to her bedroom for the purpose of securing them. Only Appellant's bedroom door had a lock. Appellant explained to Agent Valentine that she had secured the items because she was uncertain whether they were dangerous, and she knew that police lock up dangerous items. Appellant stated that the cash in the safe consisted of rental income as well as the entirety of her savings that she had recently withdrawn from her savings account. Appellant testified that she worked hard as a massage therapist and deserved to have her money readily available. She also asserted that the cash in the cigar boxes from Jones's bedroom did not belong to her.

Appellant admitted during her direct examination that she had been convicted in 2008 for the offense of possessing cocaine and had successfully completed probation. She testified that the guns found during the search of her home belonged to Jefferson's stepson, Eric, who had been staying at the house while he performed

4

tile work on the kitchen floors. Appellant explained that she had secured the guns in her home so that no one could access them. Appellant clarified that, when Jefferson had gone to Appellant's house to pick up Eric's property from the cluttered bedroom, she began noticing that boxed gifts for her grandchildren, which had been ready for mailing, were under his bed. She searched the room and found the cigar boxes, and Jefferson helped transfer the items to Appellant's bedroom. Appellant claimed that she attempted to inform Agent Valentine of these facts but that he became "very hostile" with her so she "decided just to shut [her] mouth." She explained that the envelope marked "work" had been in the trash and had contained receipts for work materials, tile, shingles, felt, and nails that she had purchased for her house.

Before beginning his cross-examination of Appellant, the prosecutor argued outside the presence of the jury that Appellant's testimony had "opened the door" to permit inquiry regarding Appellant's prior felony conviction and three pending drug cases to show Appellant's intent, bias, plan, and lack of mistake and for general impeachment of Appellant's testimony. One pending charge was for possession of methamphetamine that occurred in February 2014, and the remaining two pending felony charges were for possession of methamphetamine with intent to deliver that occurred in November 2015 and October 2017. Two of those offenses were alleged to have occurred at Appellant's Shelton Street home. The State also informed the trial court that it wanted to question Appellant regarding her unrecorded statement to Agent Valentine, to whom she had explained that she had obtained the revolver in exchange for drugs.

Defense counsel agreed that the prior conviction could be used, but he objected to the use of Appellant's extraneous pending cases because the prejudice to Appellant outweighed the probative value of such inquiry and would "inflame the jury." He agreed that the State could examine Appellant about her statements to

Agent Valentine with regard to the trade of drugs for one of the guns and observed, "I think those are okay even though they might be hearsay in the sense that they're statements against interest. So, therefore, I don't have an adequate objection to that."

The trial court ruled that Appellant's prior conviction and pending drug charges were relevant and could be used to show motive, intent, preparation, plan, and absence of mistake and that such evidence would be more probative than prejudicial. The trial court also ruled that the prosecutor could ask Appellant about the statements she had made to officers who executed the search warrant.

Before the State commenced cross-examination, the trial court informed the jury that the State would be introducing evidence of extraneous bad acts and crimes for the sole purpose of possibly showing motive, intent, preparation, plan, and absence of mistake. The trial court also instructed the jury that it could not consider that evidence for any other purpose and could not consider that evidence unless the jury found and believed beyond a reasonable doubt that Appellant had committed those acts, if it found that any such acts had been committed.

During cross-examination, Appellant acknowledged that she had been convicted in 2008 for the offense of possession of cocaine at her home, which was in a drug-free zone, and that she also had been arrested at her home in February 2014 for the offense of possession of less than one gram of methamphetamine. Appellant claimed that the methamphetamine found in her home in 2014 did not belong to her.

Appellant admitted that she had been arrested at her home in November 2015 for assaulting her common-law ex-husband, Kenneth Johnson, but denied that she had committed the assault. During the course of that arrest, Appellant was found to have been in possession of approximately $4,500, twenty-five grams of methamphetamine, and packaging materials. She testified that the methamphetamine had belonged to her ex-husband.

6

Appellant subsequently moved to Merchant Street. Appellant admitted that, during a search of that property in 2017, she again was found to have been in possession of methamphetamine, but she declared that she had found those packages in a back room and did not know what was in them. Appellant claimed that she was not a drug dealer and conceded that she had "the worst luck ever."

Appellant denied that she had informed Agent Valentine at the time of her arrest in this case that she believed that the .38 caliber revolver had been "stolen and [she] had traded drugs for it." She asserted that the guns found in her house belonged to Jefferson and his stepson.

On redirect examination, Appellant testified that she was a recovering addict, had been "clean" for eleven years, had served on the board of a rehabilitation organization, and had sponsored and counseled others in recovery. She explained that she had welcomed recovering addicts into her home, like Justin Jones, and was devastated to find Jones's methamphetamine in her home and that she attempted to dispose of it. On recross-examination, Appellant claimed that she had called and reported to police that she had found the drugs and wanted to surrender them, but she admitted that she had not done this in "any of these four cases."

The State called rebuttal witnesses, including Agent Valentine who stated that, after he had informed Appellant of her rights, she told him that she believed that the revolver had been "stolen because she had traded drugs for the gun." He acknowledged that he had not recorded Appellant's statement.

Detective John Lopez worked in the Abilene Police Department's Crimes Against Persons unit but had been a patrol officer at the time of Appellant's November 2015 assault arrest. After Appellant had been arrested in that case, officers searched Appellant's "bags" and found $4,450, pills, marihuana, and methamphetamine.

7

William L. Todsen, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, tested the evidence seized in November 2015. He confirmed that the substance in the packaging tested positive for methamphetamine and had a net weight of 22.19 grams.

Agent Wayne Cockerham, a narcotics agent with the Taylor County Sheriff's Department, executed a search warrant at Appellant's home on Merchant Street in October 2017. During the search of Appellant's residence, officers found marihuana and other items, which included Appellant's purse that contained Appellant's driver's license, digital scales, marihuana, and a large package and eight smaller packages of methamphetamine. Agent Cockerham explained that such methamphetamine packaging indicates that the drug is ready to be sold and is not typically found on a user unless the user is also a dealer. Although two other men and another woman were detained at the house with Appellant, everyone was released except Appellant.

Detective Christopher Milliron of the Abilene Police Department executed a warrant for Appellant's arrest at her home on Shelton Street in February 2014. Detective Milliron allowed Appellant to get whatever she needed from her home, but because she was under arrest, he escorted Appellant into her room. He observed Appellant cover a tray containing drug paraphernalia that was on the bed. Detective Milliron read Appellant her rights and asked her about the items on the tray, which included rolling papers, clear plastic baggies that were contained inside a larger plastic bag, a marihuana leaf ashtray, and a glass pipe commonly used to smoke meth or crack cocaine. One of the small plastic baggies contained methamphetamine. Appellant advised Detective Milliron that the items belonged to someone named Gus.

*Analysis*

In her first issue, Appellant contends that the trial court abused its discretion when it admitted into evidence her prior conviction and her arrests for extraneous offenses. She asserts that their admission violated both Rule 404(b) and Rule 403 of the Texas Rules of Evidence. Initially, Appellant contends that the prior convictions were not relevant to show her intent, plan, motive, or lack of mistake apart from their tendency to prove conduct in conformity with her character. She also asserts that the probative value of the convictions was substantially outweighed by the danger of unfair prejudice.

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). An abuse of discretion occurs when the judge's decision falls outside the zone of reasonable disagreement. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Extraneous-offense evidence is admissible under both Rule 404(b) and Rule 403 if it is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and if the probative value of the evidence is not substantially outweighed by unfair prejudice. TEX. R. EVID. 403, 404(b); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *see also De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the evidence satisfies this two-prong test, a trial court's ruling is generally within the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 344.

Rule 404(b) prohibits the admission of extraneous-offense evidence at the guilt/innocence phase of a trial to prove that a defendant committed the charged offense in conformity with bad character. *Devoe*, 354 S.W.3d at 469 (citing TEX. R.

EVID. 404(b)).  However, when extraneous-offense evidence has relevance apart from character conformity, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  TEX. R. EVID. 404(b)(2); *see Devoe*, 354 S.W.3d at 469 (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)).  Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence."  TEX. R. EVID. 401.  Additionally, one well-established rationale to admit evidence of extraneous offenses is to rebut a defensive theory that negates one of the elements of the offense.  *De La Paz*, 279 S.W.3d at 343; *Martin*, 173 S.W.3d at 466.

Appellant asserts that there was no need to offer her prior drug conviction and pending drug charges because other evidence established the following facts: (1) that she had more than a "personal use" amount of methamphetamine and (2) that she was aware that the methamphetamine was contraband.  In response, the State asserts that the evidence had relevance apart from character conformity because it rebutted Appellant's defensive theory that she innocently had found the contraband and therefore lacked an intent to possess or distribute it.  We agree with the State's analysis.

"The 'doctrine of chances' tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance."  *Dabney*, 492 S.W.3d at 317 (citing *De La Paz*, 279 S.W.3d at 347).  Here, Appellant claimed an innocent intent based upon her purported discovery of someone else's drugs and her attempt to secure them.  The details of the extraneous offenses established that Appellant had made similar claims on other occasions when she was found to be in possession of contraband.  This evidence made her claim of innocent intent less believable because she had made implausible claims of the same type on prior occasions.  It rebutted Appellant's claim that she had "the worst luck ever."  Accordingly, the trial court

10

did not abuse its discretion by determining that this evidence was admissible to rebut Appellant's claim of innocent possession. *See De La Paz*, 279 S.W.3d at 348.

Even if extraneous-offense evidence is relevant under Rule 404(b), the trial court may exclude it under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice. TEX. R. EVID. 403; *see Martin*, 173 S.W.3d at 467. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *See Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A Rule 403 balancing test includes the following factors: (1) how compellingly the extraneous-offense evidence serves to make a fact of consequence more or less probable; (2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to help establish this fact, and is this fact related to an issue in dispute. *De La Paz,* 279 S.W.3d at 348–49

In applying the factors listed above, we conclude that the admission of Appellant's prior conviction and pending drug charges did not violate Rule 403. The extraneous offenses occurred within a ten-year period, both before and after the underlying offense. They highlighted Appellant's familiarity with methamphetamine within her home and her repeated attributions of both ownership of the contraband and fault to others. The record does not reflect that the evidence of Appellant's prior conviction and arrests had the potential to impress the jury in an irrational manner. The extraneous-offense evidence related directly to Appellant's offense of possession with intent to distribute methamphetamine in a drug-free zone, and the trial court instructed the jury that it was to consider evidence of the

extraneous crimes or bad acts only for a limited purpose, namely to prove motive, intent, preparation, plan, and absence of mistake. The evidence did not consume an inordinate amount of time to present. The record does not show that the State had other probative evidence available to rebut Appellant's claim of an innocent intent. Accordingly, any unfair prejudice from the extraneous offense evidence did not substantially outweigh its probative value. *See De La Paz*, 279 S.W.3d at 343–44; *Martin*, 173 S.W.3d at 467. We conclude that the trial court's admission of Appellant's prior conviction and arrests was within the zone of reasonable disagreement and did not constitute an abuse of discretion. *See Devoe*, 354 S.W.3d at 469. We overrule Appellant's first issue.

In her second issue, Appellant complains that defense counsel provided ineffective assistance of counsel when he did not object when the State cross-examined her regarding an unrecorded conversation with Agent Valentine about a gun-for-drugs trade. Appellant contends that defense counsel should have re-urged his earlier objection to the admission of Agent Valentine's testimony regarding Appellant's unrecorded statement. She contends that it was inadmissible because it was taken in violation of section 3(a) of Article 38.22 of the Texas Code of Criminal Procedure, which establishes the parameters for the admission of an accused's unrecorded oral or sign language statement that is made as a result of a custodial interrogation. TEX. CODE CRIM. PROC. ANN. art. 38.22, § (3)(a) (West 2018).

To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). An appellant must initially show that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 689; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (explaining that the right to effective assistance of counsel does not provide a right to errorless

12

counsel but, rather, to objectively reasonable representation); *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). If the first prong is satisfied, an appellant must satisfy the second prong and show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez*, 726 S.W.2d at 55. If an appellant fails to meet either prong of the *Strickland* test, we must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142.

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland*, 928 S.W.2d at 500. Counsel's performance is judged by "the totality of the representation." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). When we assess the validity of a defendant's claim of ineffective assistance of counsel, our judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

It is difficult to overcome this presumption; the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Lopez*, 343 S.W.3d at 143. Rarely are we provided an opportunity to determine a claim of ineffective assistance of counsel on direct appeal. *Thompson*, 9 S.W.3d at 813. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced

as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record on direct appeal is undeveloped, it cannot adequately reflect counsel's failings, and the complaint is more appropriately urged in a hearing on an application for writ of habeas corpus. *Lopez*, 343 S.W.3d at 143; *Thompson*, 9 S.W.3d at 813–14.

During Agent Valentine's initial direct examination, the prosecutor sought to ask him about unrecorded conversations that he had with Appellant after he informed her of her rights. A portion of the proposed questions related to Appellant's surrender of the items in her bedroom. The prosecutor sought to elicit testimony from Agent Valentine that Appellant told him that she believed one of the guns had been stolen because she obtained it in a trade for drugs. Defense counsel noted his objection to questions regarding the revolver, and the prosecutor subsequently volunteered to omit the question regarding it.

During her direct examination, Appellant testified that the guns did not belong to her. When defense counsel asked Appellant where she got "those guns," Appellant replied that the guns belonged to Jefferson's stepson and that Jefferson had come to retrieve the guns, which she had locked in her bedroom.

Before cross-examination, the prosecutor informed the trial court outside the presence of the jury that he wished to question Appellant about her statement in which she had declared to Agent Valentine that she had traded the revolver, which she believed had been stolen, for drugs. Defense counsel informed the trial court, "I think [Appellant's statements regarding the guns] are okay even though they might be hearsay in the sense that they're statements against interest. So, therefore, I don't have an adequate objection to that." On cross-examination, the prosecutor asked Appellant whether she remembered informing Agent Valentine that she believed that the .38 caliber revolver that she had traded for drugs was a stolen weapon. Appellant denied that the conversation had occurred. On rebuttal, Agent Valentine testified

that, after being warned of her rights, Appellant informed him in an unrecorded statement "that the revolver was likely stolen because she had traded drugs for the gun."

Appellant did not raise her claims in a motion for new trial. Accordingly, the record is silent as to trial counsel's strategy, if any, in response to Appellant's allegation of ineffective assistance of counsel. However, defense counsel informed the trial court that he did not believe he had a valid basis for objecting to the prosecutor's cross-examination question regarding Appellant's conversation with Agent Valentine about her acquisition of the revolver wherein he explained that, although Appellant's statement was hearsay, he believed that it was admissible as a statement against interest.

In order to prevail on her claim that trial counsel was ineffective for failing to object, Appellant must establish that the evidence was inadmissible; defense counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *See Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012). Appellant contends that trial counsel should have objected to the admission of Agent Valentine's statement under Article 38.22, section 3(a) because it was not recorded. However, Article 38.22, section 5 allows for the admission of a voluntary statement of the accused that bears on his or her credibility. *Giron v. State*, 695 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1985, no pet.); *Robinson v. State*, 681 S.W.2d 288, 289 (Tex. App.—San Antonio 1984, pet. ref'd). Specifically, Article 38.22, section 5 provides in relevant part as follows: "Nothing in this article precludes the admission of . . . a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness[.]" CRIM. PROC. art. 38.22, § 5. Thus, Article 38.22, section 3(a) is not applicable to oral statements, even those made post-arrest, when used to impeach an

15

accused's inconsistent statement provided that the oral statement was voluntary. *Lykins v. State*, 784 S.W.2d 32, 35–36 (Tex. Crim. App. 1989).

Appellant took the stand on her own volition and offered testimony about the guns. Accordingly, the State was entitled to impeach her testimony with her oral statement to Agent Valentine about how she obtained one of the guns. In this regard, there is no contention that Appellant's statements to Agent Valentine were not voluntary. Accordingly, Appellant's statements to Agent Valentine were admissible to impeach her direct testimony under Article 38.22, section 5, irrespective of the fact that they were not recorded. Thus, Appellant has not established that trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *McFarland*, 928 S.W.2d at 500. We overrule Appellant's second issue.

## This Court's Ruling

We affirm the judgments of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

March 25, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.